

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1215-13

**CAMERON MOON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

PRICE, J., delivered the opinion of the Court in which WOMACK, JOHNSON, KEASLER, COCHRAN and ALCALA, JJ., joined. KELLER, P.J., filed a dissenting opinion in which HERVEY, J., joined. MEYERS, J., dissented.

### O P I N I O N

We granted the State's petition for discretionary review in this case in order to address

several questions related to the appellate review of a juvenile court's waiver of its otherwise-

exclusive jurisdiction over a person alleged to have committed a murder at the age of sixteen.

What, exactly, is the appellate court's appropriate role in reviewing the adequacy of the

juvenile court's statutorily required written order transferring the child to a criminal district court for prosecution as an adult? Ultimately, we hold that the court of appeals conducted an appropriate review of the juvenile court's transfer order, and we affirm its judgment.

## I. FACTS AND PROCEDURAL POSTURE

### A. State's Motion to Waive Jurisdiction and Trial

On November 19, 2008, the State filed a petition in the 313th Juvenile Court in Harris County alleging that the appellant engaged in delinquent conduct by committing an intentional or knowing murder. On the same date, the State also filed a motion for the juvenile court to waive its exclusive jurisdiction and transfer the appellant to criminal district court for prosecution as an adult, alleging as grounds for the transfer that, because of the seriousness of the offense alleged, ensuring the welfare of the community required waiver of juvenile jurisdiction. The juvenile court granted the State's request for a hearing on the motion and, pursuant to Section 54.02(d) of the Juvenile Justice Code in the Texas Family Code,[1] ordered that the Chief Juvenile Probation Officer obtain a complete diagnostic study, social evaluation, and full investigation of the appellant's background and the circumstances of the alleged offenses.[2] The juvenile court also ordered the Mental Health and Mental

---

[1] TEX. FAM. CODE title 3, Juvenile Justice Code (hereinafter, "the Juvenile Justice Code").

[2] TEX. FAM. CODE § 54.02(d). The appellant complains that "[p]rior to the hearing, the State failed to conduct the statutorily mandated diagnostic or social evaluation[.]" Appellant's Response to the State's Brief on Discretionary Review at 1. But the appellant did not raise this issue as grounds for reversal on direct appeal, and we have no occasion to speak to it. *See* Appellant's Brief on Direct Appeal at 16.

Retardation Authority of Harris County to conduct an examination and file its report.

At the hearing, the State called a single witness to testify: Detective Jason Meredith, the Deer Park Police officer who investigated the crime scene and interviewed a number of potential suspects, including the appellant. Meredith's testimony on direct examination took the form of a non-chronological account of his investigation of the murder, up to and including his interrogation of the appellant. At the end of his testimony, over no objection from the appellant, the State introduced the following documents: (1) a juvenile offense report revealing the appellant's "Previous Referral" for "MISCHIEF-$500/$1499.99," which, subsequent testimony would show, resulted from the appellant's alleged "keying" of another student's vehicle; (2) a "Juvenile Probation Certification Report" detailing the positive and negative behaviors, as well as the academic history, of the appellant while he was under the observation of the juvenile-justice system; and (3) a "Physician's Medical Assessment" prepared by the Harris County Juvenile Probation Health Services Division, which listed the findings of the appellant's physical—but not any psychological or behavioral—examination.

For his part, the appellant elicited testimony from seven witnesses. Various family members, friends, and acquaintances testified both generally and specifically about the appellant's disadvantaged upbringing, fractured family life, and positive personal qualities, including politeness and pliability to adult supervision. Various actors within the juvenile-justice system testified both generally and specifically about the appellant's constructive conduct within, and positive progression through, the juvenile-justice system, characterizing

him as "one of the best kids [to] come through as far as his intelligence and obedience and the way he carries himself in the facility." The appellant also introduced into evidence, among other things, forensic psychiatrist Dr. Seth W. Silverman's detailed and thorough

> recommendation as to whether [the] facilities currently available to the juvenile court will provide adequate protection to the public, and . . . the likelihood that the respondent will be rehabilitated should the court decide to use the facilities available to the juvenile court as well as the sophistication, maturity, and aggressiveness [of the appellant].

It was Dr. Silverman's ultimate opinion that the appellant, as a "dependent, easily influenced individual" whose "thought process lacks sophistication" (a characteristic Silverman considered "indicative of immaturity") "would probably benefit from placement in a therapeutic environment specifically designed for adolescent offenders[.]" Silverman contrasted this environment to the "adult criminal justice programs[,]" which he deemed to have "few constructive, and possibly many destructive, influences to offer" the appellant. Silverman also noted that the appellant had, during his stint within the juvenile-justice system, already "responded to therapy."

At the close of evidence, and after both parties delivered closing arguments, the juvenile court granted the State's motion to waive jurisdiction. At the behest of the appellant's counsel, the court also made the following oral findings: (1) "that there is insufficient time to work with the juvenile in the juvenile system"; (2) "that the seriousness of the offense, murder, makes it inappropriate to deal with in this system"; (3) that "the respondent did have a prior criminal mischief probation"; (4) that the instant offense

"actually occurr[ed] at the time respondent was on probation which . . . makes the services and resources of the juvenile system look to be inadequate"; (5) "that because there is a co-respondent [certified to stand trial in the adult criminal courts], there is a logic in putting respondents, where they are a year apart or two years apart, together"; and (6) that "judicial economy, although not the driving factor, is an issue" because "sometimes it's more convenient to hear the same matter, even though there are different people involved, in the same court for the convenience of the witnesses, the attorneys, and the system in general."

The following day, the juvenile court signed and entered a written order waiving its jurisdiction. Closely following the language of the juvenile transfer statute, the order affirmed that the juvenile court had determined "that there is probable cause to believe that the child committed the OFFENSE alleged and that because of the seriousness of the OFFENSE, the welfare of the community requires criminal proceeding."[3] The juvenile court again simply recited from the statute when it stated that:

> [i]n making that determination, the Court . . . considered among other matters:
>
> > 1. Whether the alleged OFFENSE WAS against person or property, with the greater weight in favor of waiver given to offenses against the person;
> >
> > 2. The sophistication and maturity of the child;
> >
> > 3. The record and previous history of the child; and
> >
> > 4. The prospects of adequate protection of the public and the likelihood

---

[3] TEX. FAM. CODE § 54.02(a).

of reasonable rehabilitation of the child by use of procedures, services and facilities currently available to the Juvenile Court.[4]

The juvenile court also specifically found in its written order: (1) that the appellant "is of sufficient sophistication and maturity to have intelligently, knowingly and voluntarily waived all constitutional rights heretofore waived[,] . . . to have aided in the preparation of HIS defense and to be responsible for HIS conduct;" (2) that the alleged offense "WAS against the person of another;" and that (3) "there is little, if any, prospect of adequate protection of the public and likelihood of reasonable rehabilitation of" the appellant "by use of procedures, services, and facilities currently available to the Juvenile Court."

Per the trial court's order, the appellant's case was transferred to the jurisdiction of the 178th District Court in Harris County, where he stood trial, certified as an adult, against the first-degree felony charge of murder. The jury convicted the appellant and sentenced him to thirty years' confinement in the penitentiary.

## B. The Appeal

Before the First Court of Appeals, the appellant complained that the juvenile court's stated "reasons for waiver" were supported by insufficient evidence and that the juvenile court therefore abused its discretion by waiving jurisdiction over the appellant.[5] Specifically, the appellant contended that, by focusing on the appellant's ability to "intelligently,

---

[4] *Id.* § 54.02(f).

[5] *See* TEX. FAM. CODE § 54.02(h) ("If the juvenile court waives jurisdiction, it shall state specifically in the order its reasons for waiver[.]").

knowingly, and voluntarily waive[] all constitutional rights heretofore waived," the juvenile court "misunderstood and misapplied the 'sophistication and maturity' element" of Section 54.02(f)—and that, even if it did not, there was still "no evidence to support the [juvenile] court's sophistication and maturity finding" as expressed.[6] Indeed, given that this Court opined in *Hidalgo* that the purpose of the Section 54.02(d) "psychological examination" is to "provide[] insight on the juvenile's sophistication, maturity, potential for rehabilitation, decision-making ability, metacognitive skills, psychological development, and other sociological and cultural factors[,]" the appellant found it troubling that "the State presented no evidence of *this* type whatsoever."[7] The appellant also maintained that there was "no evidence supporting the juvenile court's findings relating to adequate protection [of] the public and likelihood of rehabilitation,"[8] since "the only evidence was that" the appellant "is amenable to rehabilitation" and the "State presented no contrary evidence."[9]

In a published opinion, the court of appeals agreed with the appellant that the evidence supported neither the juvenile court's "sophistication-and-maturity" finding nor its

---

[6] Appellant's Brief on Direct Appeal at 27.

[7] *Id.* (emphasis added) (quoting *Hidalgo v. State*, 983 S.W.2d 746, 754 (Tex. Crim. App. 1999)).

[8] *Id.* at 30.

[9] *Id.* at 34.

"adequate-protection-of-the-public-and-likelihood-of-rehabilitation" finding.[10] The court noted that an "appellate court reviews a juvenile court's decision to certify a juvenile defendant as an adult . . . under an abuse of discretion standard" and cited another of its own opinions for the proposition that "if an appellate court finds the evidence factually or legally insufficient to support the juvenile court's order . . . it will necessarily find the juvenile judge has abused his discretion."[11] At the same time, the court of appeals recognized that "the juvenile court may order a transfer on the strength of any of the criteria listed in" Section 54.02(f).

Regarding the juvenile court's sophistication-and-maturity finding, while the State argued that "[the appellant]'s efforts to conceal the crime and avoid apprehension demonstrate that he knew the difference between right and wrong and that his conduct was wrong," the court of appeals pointed out that the "finding of the juvenile court . . . was based on [the appellant]'s ability to waive his rights and assist counsel in preparing his defense, not an appreciation of the nature of his actions[.]"[12] And since the State's evidence of the appellant's "efforts to conceal the crime" consisted primarily of the appellant's "text messages instructing [a compatriot] to not 'say a word,' [and to] '[t]ell them . . . you don't

---

[10] *Moon v. State*, 410 S.W.3d 366 (Tex. App.—Houston [1st Dist.] 2013).

[11] *Id.* at 370-71 (citing *In re G.F.O.*, 874 S.W.2d 729, 731-32 (Tex. App.—Houston [1st Dist.] 1994, no writ)).

[12] *Id.* at 374.

know where I live,'" the court of appeals determined that there was "no evidence supporting the juvenile court's finding that [the appellant] was sufficiently sophisticated and mature to waive his rights and assist in his defense."[13]

With respect to the juvenile court's finding that "there is little, if any, prospect of adequate protection of the public and likelihood of rehabilitation . . . by use of procedures, services, and facilities currently available to the Juvenile Court[,]" the court of appeals found it significant that the appellant "had a sole misdemeanor conviction for 'keying' a car, and while locked up in the juvenile facility was accused of four infractions."[14]  The court of appeals took this to be "more than a scintilla of evidence" to "support the court's finding" in this regard, and thus found the evidence to be at least "legally sufficient to support the court's determination" that the lack of "adequate protection of the public and likelihood of reasonable rehabilitation" weighed in favor of waiver.[15]  "However," the court of appeals continued, "careful consideration of *all* of the evidence[,]" including Dr. Silverman's report, led to the "further . . . conclusion that the evidence is factually insufficient to support the juvenile court's finding."[16]  Responding to the State's argument to the contrary, the court of

---

[13]
*Id.*

[14]
*Id.* at 376.

[15]
*Id.* at 377.

[16]
*Id.*

appeals described the appellant's act of "keying a car" as "an undeniably low level misdemeanor mischief offense" and "hardly the sort of offense for which 'there is little, if any, prospect of adequate protection of the public.'"[17] The court of appeals was also influenced by the fact that the appellant's juvenile custodial officers testified that "he followed orders, attended classes, and was not aggressive or mean-spirited."[18] Finally, the court of appeals was clearly influenced by Dr. Silverman's assessment that the appellant "would probably benefit from placement in a therapeutic environment specifically designed for adolescent offenders[.]"[19]

Thus, of the three "reasons for waiver" that the juvenile court specifically gave in its written order, the court of appeals determined that one reason, sophistication and maturity, was supported by legally insufficient evidence. It determined that another reason, the protection of the public and likelihood of rehabilitation, was supported by factually insufficient evidence. With respect to the juvenile court's third reason for waiving jurisdiction—that the appellant's offense constituted a crime against the person of another, and not a mere property crime—the court of appeals regarded this as an inadequate justification, by itself, for waiver. To transfer jurisdiction to the criminal court for this reason

---

[17] *Id.*

[18] *Id.*

[19] *Id.* at 376-77.

alone was, the court of appeals ultimately concluded, an abuse of discretion.[20] The court of appeals reasoned that, "[i]f, as the State argues, the nature of the offense alone justified waiver, transfer would automatically be authorized in certain classes of 'serious' crimes such as murder, and the subsection (f) factors would be rendered superfluous."[21] Concluding that the juvenile court abused its discretion to waive jurisdiction, the court of appeals vacated the district court's judgment of conviction, dismissed the criminal proceedings, and declared the case to be still "pending in the juvenile court."[22]

### C. The Petition for Discretionary Review

The State now challenges the court of appeals's ruling on four fronts. It argues that the court of appeals erred:

- to apply factual-sufficiency review to any aspect of its analysis of the question whether the juvenile court abused its discretion to waive jurisdiction.

- in failing to consider whether the seriousness of the offense could, by itself, justify the juvenile court's discretionary decision to waive jurisdiction.

- in limiting its abuse-of-discretion analysis to the reasons for waiver set forth in the juvenile court's written order, and failing to consider the

---

[20]   *Id*. at 378.

[21]   *Id*. at 375 (citing *R.E.M. v. State*, 541 S.W.2d 841, 846 (Tex. Civ. App.—San Antonio 1976, writ ref'd n.r.e.), for the proposition that there is "nothing in the statute which suggests that a child may be deprived of the benefits of our juvenile court system merely because the crime with which he is charged is a 'serious' crime.").

[22]   *Id*. at 378.

reasons that the juvenile court proclaimed orally from the bench at the conclusion of the hearing.

- in limiting its abuse-of-discretion analysis to a review of the specific reasons the juvenile court gave (whether written or oral), rather than to assay the entire record for any evidence that would support a valid reason to waive jurisdiction, regardless of whether the juvenile court purported to rely on that evidence/reason.

Review of these various assertions necessitates a fairly global exegesis of the statutory scheme for the waiver of juvenile-court jurisdiction in Texas, as well as the abundant case law that has been generated in the courts of appeals over the past half a century.

## II. THE LAW AND THE STANDARD OF APPELLATE REVIEW

### A. *Kent v. United States*

The transfer of a juvenile offender from juvenile court to criminal court for prosecution as an adult should be regarded as the exception, not the rule; the operative principle is that, whenever feasible, children and adolescents below a certain age should be "protected and rehabilitated rather than subjected to the harshness of the criminal system[.]"[23] Because the waiver of juvenile-court jurisdiction means the loss of that protected status, in *Kent v. United States*, the United States Supreme Court characterized the statutory transfer proceedings in the District of Columbia as "critically important," and held that any statutory mechanism for waiving juvenile-court jurisdiction must at least "measure up to the essentials

---

[23] *Hidalgo*, 983 S.W.2d at 754. *See* TEX. FAM. CODE § 51.01(2) (Juvenile Justice Code is to be construed to balance "the concept of punishment for criminal acts" with the ideal "to remove, where appropriate, the taint of criminality from children committing certain unlawful acts"—all "consistent with the protection of the public and public safety").

of due process and fair treatment."[24]  Among the requisites of a minimally fair transfer process, the Supreme Court tacitly assumed in *Kent*, is the opportunity for meaningful appellate review.[25]  The appellate court

> must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts.  It may not assume that there are adequate reasons, nor may it merely assume that full investigation has been made.  Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor.  We do not read the [relevant District of Columbia] statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact.  But the statement should be sufficient to demonstrate that the statutory requirement of full investigation has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review.[26]

In an appendix to its opinion in *Kent*, the Supreme Court included a policy memorandum promulgated by the District of Columbia Juvenile Court that describes "determinative factors" for guiding the juvenile court's discretion in deciding whether waiver of its jurisdiction over a particular juvenile offender is appropriate.[27]  The Texas Legislature soon incorporated those factors, albeit non-exclusively, into our own statutory scheme.[28]  Missing

---

[24]  383 U.S. 541, 560-62 (1966).

[25]  *See id*. at 561 ("Meaningful review requires that the reviewing court should review.").

[26]  *Id*.  (internal quotation marks omitted).

[27]  *Id*. at 565-67.

[28]  Acts 1967, 60th Leg., ch. 475, § 4, p. 1083-84, eff. Aug. 28, 1967 (currently codified at

from the Supreme Court's *Kent* opinion, however, is any detailed description of a standard for appellate review of the juvenile court's transfer decision.

### B. The Statutory Scheme

The Juvenile Justice Code of the Texas Family Code specifically provides that the designated juvenile court of each county has "exclusive original jurisdiction over proceedings in all cases involving . . . delinquent conduct . . . engaged in by a person who was a child within the meaning of this title at the time the person engaged in the conduct."[29] "Delinquent conduct" includes "conduct . . . that violates a penal law of this state . . . punishable by imprisonment or by confinement in jail;"[30] and a "child," as defined by the Juvenile Justice Code, is any "person . . . ten years of age or older and under 17 years of age[.]"[31] Thus, any person accused of committing a felony offense between his tenth and seventeenth birthdays is subject to the exclusive original jurisdiction of a juvenile court, meaning that the juvenile court has the "power to hear and decide" matters pertaining to the juvenile offender's case

---

TEX. FAM. CODE § 54.02(f)). *See* Robert O. Dawson, *Delinquent Children and Children in Need of Supervision: Draftsman's Comments to Title 3 of the Texas Family Code*, 5 TEX. TECH. L. REV. 509, 562 (1974) ("Most of the procedural safeguards incorporated in [§ 54.02] are probably required as a matter of federal constitutional law by the Supreme Court's decision in *Kent v. United States*, 383 U.S. 541 (1966)."). *But see, contra*: *Galloway v. State*, 578 S.W.2d 142, 143 (Tex. Crim. App. 1979) ("*Kent* did not purport to do more than construe the District of Columbia juvenile statutes, and it is not clear that it sets constitutional requirements.").

[29] TEX. FAM. CODE § 51.04(a).

[30] *Id.* § 51.03(a)(1).

[31] *Id.* § 51.02(2)(a).

"before any other court[,]" including the criminal district court, can review them.[32]

The right of the juvenile offender to remain outside the jurisdiction of the criminal district court, however, is not absolute. Section 54.02 of the Juvenile Justice Code provides that, if certain conditions are met, the "juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court . . . for criminal proceedings[.]"[33] Before it may exercise its discretion to waive jurisdiction over an alleged child offender, the juvenile court must find that

> (1) the child is alleged to have violated a penal law of the grade of felony; (2) the child was . . . 14 years of age or older at the time [of the alleged] offense, if the offense is . . . a felony of the first degree[;] and (3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings

in the proper adult criminal court.[34] "In making the determination required by Subsection [54.02](a)"—that is, whether the "welfare of the community" indeed requires adult criminal proceedings to be instituted against the juvenile,

> the [juvenile] court shall consider, among other matters: (1) whether the alleged offense was against person or property, with greater weight in favor of

---

[32]

BLACK'S LAW DICTIONARY 982 (10th ed. 2014) (defining "original jurisdiction" as "[a] court's power to hear and decide a matter before any other court can review the matter"). *See also id.* at 981 (defining "exclusive jurisdiction" as "[a] court's power to adjudicate an action or class of actions to the exclusion of all other courts").

[33]

TEX. FAM. CODE § 54.02(a).

[34]

*Id.*

transfer given to offenses against the person; (2) the sophistication and maturity of the child; (3) the record and previous history of the child; and (4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.[35]

These non-exclusive factors serve, we have said, to facilitate the juvenile court's balancing of "the potential danger to the public" posed by the particular juvenile offender "with the juvenile offender's amenability to treatment."[36] Finally, should the juvenile court choose to exercise its discretion to waive jurisdiction over the child, then the Juvenile Justice Code directs it to "state specifically" in a written order "its reasons for waiver and [to] certify its action, including the written order and findings of the court."[37]

For the juvenile, there are a number of advantages to remaining outside of the jurisdiction of the adult criminal courts. Not the least of these advantages is that, with but a few exceptions, a "child may not be committed or transferred to a penal institution or other facility used primarily for the execution of sentences of persons convicted of crime, *except*

---

[35] *Id.* § 54.02(f). These are the factors that derive from the *Kent* appendix. *See* note 27, *ante*. They are "intended to guide the [juvenile] court's discretion in making the determination to transfer." Dawson, 5 TEX. TECH. L. REV. at 564. Initially, Section 54.02(f) embraced all six of the *Kent* factors, but the statute was amended in 1996 to remove two of them. Acts 1995, 74th Leg., ch. 262, § 34, p. 2533, eff. Jan. 1, 1996.

[36] *Hidalgo*, 983 S.W.2d at 754.

[37] TEX. FAM. CODE § 54.02(h)

. . . after transfer for prosecution in criminal court under Section 54.02[.]"[38] Indeed, a juvenile offender may not even be handed a sentence—"no disposition may be made"—upon his being "found to have engaged in delinquent conduct" unless and until the juvenile court or a jury determines that "the child is in need of rehabilitation or the protection of the public or the child requires that disposition be made."[39] And we ourselves have acknowledged the goals of the criminal justice system and the juvenile-justice system to be fundamentally different, describing the former as more "retributive" than its "rehabilitative" juvenile counterpart.[40]

Prior to January 1, 1996, Section 56.01 of the Juvenile Justice Code provided, in one phrasing or another, that an appeal "from an order entered under . . . Section 54.02 of this

---

[38]

There are other exceptions to this general rule not implicated in this case, including an exception for "temporary detention in a jail or lockup pending juvenile court hearing," *id.* § 51.13(c)(1), as well as one for "transfer . . . under Section 245.151(c), Human Resources Code." *Id.* § 51.13(c)(3); *see also* TEX. HUM. RES. CODE § 245.151(c) (the Texas Juvenile Justice Department "shall transfer" an adjudicated juvenile offender "to the custody of the Texas Department of Criminal Justice for the completion of the person's sentence" when, pursuant to court order under TEX. FAM. CODE § 54.11(i)(2) and TEX. HUM. RES. CODE § 244.014(a), the juvenile court determines that "the child's conduct" while under State supervision "indicates that the welfare of the community requires the transfer").

[39]

*See* TEX. FAM. CODE § 54.04(c) ("If the court or jury does not so find, the court shall dismiss the child and enter a final judgment without any disposition."). In keeping with the Juvenile Justice Code's stated purpose to "remove, where appropriate, the taint of criminality from children committing certain unlawful acts[,]" TEX. FAM. CODE § 51.01(2)(B), the juvenile-justice equivalent of a "conviction" for delinquent conduct is referred to instead as an "adjudication," TEX. FAM. CODE § 54.03, and the juvenile-justice equivalent of a "sentence" for an adjudication is instead referred to as a "disposition." TEX. FAM. CODE § 54.04.

[40]

*Hidalgo*, 983 S.W.2d at 755.

code respecting transfer of the child to criminal court for prosecution as an adult" could be taken "by or on behalf of a child" directly from the juvenile court to the proper court of appeals.[41] What this meant in practical terms was that an alleged juvenile offender could complain immediately of the juvenile court's order waiving its jurisdiction, and, if appropriate, seek discretionary review from the Texas Supreme Court "as in civil cases generally."[42] In 1995, however, the Legislature approved an amendment to the Juvenile Justice Code, effective January 1, 1996, in which the portion of Section 56.01(c) that provides for the direct, civil appealability of Section 54.02 waivers was struck.[43] Contemporaneous with this amendment, the Legislature added Article 44.47 to the Texas Code of Criminal Procedure, providing in Section (b) thereof that a "defendant may appeal a transfer under [Section 54.02, Family Code] *only* in conjunction with the appeal of a conviction of . . . the offense for which the defendant was transferred to criminal court."[44] What this means in practical terms is that an alleged juvenile offender may no longer immediately appeal from the juvenile court's waiver of jurisdiction; instead, he must wait until such time as he may be convicted in an adult criminal court to complain, on appeal, of

---

[41] *See* Acts 1973, 63d Leg., ch. 544, § 1. p. 1483, eff. Sept. 1, 1973.

[42] *Id.*

[43] Acts 1995, 74th Leg., ch. 262, § 48, p. 2546, eff. Jan. 1, 1996.

[44] *Id.* at § 85, p. 2584 (emphasis added).

some error in the juvenile court's transfer ruling. Although the Legislature designated an appeal from a juvenile court's Section 54.02 order to be a "criminal matter . . . governed by [the Code of Criminal Procedure] and the Texas Rules of Appellate Procedure that apply to a criminal case[,]" it nevertheless expressly provided, in Article 44.47(d), that an appeal under Article 44.47(b) "may include any claims under the law that existed before January 1, 1996, that could have been raised on direct appeal in a transfer under Section 54.02, Family Code."[45]

What is lacking in our statutory scheme—as is lacking in *Kent*—is any express statement of the applicable standard of appellate review of the juvenile court's transfer order. In the absence of an explicit statutory standard of appellate review, the courts of appeals have filled the void with decisional law spelling out how they will go about providing the "meaningful review" contemplated by *Kent*.

### C. The Consensus in the Courts of Appeals

In the absence of explicit provisions in the Juvenile Justice Code that define a standard for appellate review of juvenile transfer orders, the general consensus of the various courts of appeals has been as follows. The burden is on the petitioning party, the State, to produce evidence to inform the juvenile court's discretion as to whether waiving its otherwise-exclusive jurisdiction is appropriate in the particular case.[46] Transfer of a juvenile offender

---

[45]

*Id.*

[46]

*Matter of Honsaker*, 539 S.W.2d 198, 201 (Tex. Civ. App. —Dallas 1976, ref'd n.r.e.);

to criminal court is appropriate only when the State can persuade the juvenile court, by a preponderance of the evidence,[47] that the welfare of the community requires transfer of jurisdiction for criminal proceedings, either because of the seriousness of the offense or the background of the child (or both).[48] In exercising its discretion, the juvenile court must consider all of the *Kent* factors as currently codified in Section 54.02(f) of the Juvenile Justice Code;[49] "it is from the evidence concerning [the Section 54.02(f)] factors that a [juvenile] court makes its final determination."[50] But it need not find that each and every one of those factors favors transfer before it may exercise its discretion to waive jurisdiction.[51] It may transfer the juvenile so long as it is satisfied by a preponderance of the evidence that

---

*B.R.D. v. State*, 575 S.W.2d 126, 131 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.); *Matter of M.I.L.*, 601 S.W.2d 175, 177 (Tex. Civ. App.—Corpus Christi 1980, no writ); *Matter of E.D.N.*, 635 S.W.2d 798, 800 (Tex. App.—Corpus Christi 1982, no writ); *Moore v. State*, 713 S.W.2d 766, 768 (Tex. App.—Houston [14th Dist.] 1986, no writ).

[47]

*Matter of P.B.C.*, 538 S.W.2d.448, 453 (Tex. Civ. App.—El Paso 1976, no writ).

[48]

*Faisst v. State*, 105 S.W.3d 8, 11 (Tex. App.—Tyler 2003, no pet.).

[49]

*See In re J.R.C.*, 522 S.W.2d 579, 584 (Tex. Civ. App.—Texarkana 1975, ref'd n.r.e.) (juvenile court's "findings should show an investigation in every material field [listed in Section 54.02(f)] was undertaken and the result thereof").

[50]

*Matter of M.I.L.*, 601 S.W.2d at 177.

[51]

*E.g.*, *Matter of J.R.C.*, 551 S.W.2d 748, 753 (Tex. Civ. App.—Texarkana 1977, ref'd n.r.e.); *D.J.R. v. State*, 565 S.W.2d 392, 395 (Tex. Civ. App.—Fort Worth 1978, no writ); *Matter of G.B.B.*, 572 S.W.2d 751, 756 (Tex. Civ. App.—El Paso 1978, ref'd n.r.e.); *Casiano v. State*, 687 S.W.2d 447, 449 (Tex. App.—Houston [14th Dist.] 1985, no writ); *Matter of K.D.S.*, 808 S.W.2d 299, 302 (Tex. App.—Houston [1st Dist.] 1991, no writ); *C.M. v. State*, 884 S.W.2d 562, 564 (Tex. App.—San Antonio 1994, no writ).

the seriousness of the offense or the background of the child (or both) indicates that the welfare of the community requires criminal proceedings.[52]

With respect to the adequacy of the written order mandated by Section 54.02(h), the courts of appeals have generally agreed, first of all, that the written order must reflect the juvenile court's "reasons" for waiving jurisdiction.[53] Despite the express edict of the statute (*i.e.*, the written order "shall state *specifically* [the juvenile court's] reasons for waiver"), the courts of appeals have sometimes sanctioned orders that recited the reasons for transfer in terms no more specific than the bare statutory language, namely, that because of the

---

[52]

*See, e.g.*, *Matter of J.R.C.*, 551 S.W.2d at 753 ("Section 54.02 does not require that, in order for the juvenile court to waive its jurisdiction, all of the matters listed in Subsection (f) must be established. * * * The statute only directs that the juvenile court *consider* the matters listed under Subsection (f) in making its determination. * * * They are the criteria by which it may be determined if the juvenile court properly concluded that the seriousness of the offense or the background of the child required a transfer to criminal court."); *In re Q.D.*, 600 S.W.2d 392, 395 (Tex. Civ. App.—Fort Worth 1980, no writ) ("[T]he [juvenile] court is bound only to consider all [of the Subsection (f)] factors. It need not find that each factor is established by the evidence."); *P.G. v. State*, 616 S.W.2d 635, 639 (Tex. Civ. App.—San Antonio 1981, ref'd n.r.e.) ("The [juvenile] court need not find that all the factors in subdivision (f) have been established, but it must consider all these factors and state the reasons for its transfer so that the appellate court may review the basis on which the conclusion was made and can determine whether the evidence so considered does in fact justify that conclusion."); *Matter of E.D.N.*, 635 S.W.2d at 800 ("If the evidence establishes enough of the factors in subdivision (f) to convince the [juvenile] court that a transfer is in the best interest of the child and community, we will not disturb that order."); *McKaine v. State*, 170 S.W.3d 285, 291 (Tex. App.—Corpus Christi 2005, no pet.) (While the juvenile court must consider all of these factors before transferring the case to district court, it is not required to find that each factor is established by the evidence. * * * The court is also not required to give each factor equal weight as long as each is considered.").

[53]

*See e.g.*, *In re J.R.C.*, 522 S.W.2d at 584 ("The reasons motivating the Juvenile Court's waiver of jurisdiction must expressly appear."); *P.G.*, 616 S.W.2d at 639 (juvenile court must "state the reasons for its transfer").

seriousness of the offense or the background of the child, transfer is required to ensure the welfare of the community.[54] In addition to specifying "reasons," the order should also expressly recite that the juvenile court actually took the Section 54.02(f) factors into account in making this determination.[55] But it need make no particular findings of fact with respect to those factors,[56] notwithstanding Section 54.02(h)'s pointed requirement that the juvenile

---

[54]

*Matter of Honsaker*, 539 S.W.2d at 200, 201-02 (construing *In re J.R.C.* and holding that a transfer order that recited the statutory criteria for waiver of juvenile jurisdiction and found them to be satisfied provided "sufficient specificity . . . to allow an appellate court to review and understand the reason for the juvenile court's determination"); *D.L.C. v. State*, 533 S.W.2d 157, 159 (Tex. Civ. App.—Austin 1976, no writ) (order stating in conclusory terms that the Subsection (f) factors were satisfied, without going into detail, was nevertheless sufficient to comply with the requirement of written "reasons" in Subsection (h)); *In re W.R.M.*, 534 S.W.2d 178, 181 (Tex. Civ. App.—Eastland 1976, no writ) ("In the instant case, the order discloses that the matters listed in Subsection (f) were considered, and the order states specific reasons for waiver. The fact that some of the recitations constitute conclusions does not require a reversal of the court's order."); *Q.V. v. State*, 564 S.W.2d 781, 784 (Tex. Civ. App.—San Antonio 1978, ref'd n.r.e.) (written transfer order that merely stated conclusorily that Subsection (f) factors were satisfied, *sans* any detailed description of the evidence, was nevertheless "sufficiently specific as to the 'reasons' for" the juvenile court's decision to waive jurisdiction); *In re C.L.Y.*, 570 S.W.2d 238, 239, 241 (Tex. Civ. App.—Houston [1st Dist.] 1978, no writ) (same); *Appeal of B.Y.*, 585 S.W.2d 349, 351 (Tex. Civ. App.—El Paso 1979, no writ) ("Reversible error is not present here by the fact that the [juvenile court's] order seems to parrot the Section 54.02 list of factors the [juvenile court] should consider in making a transfer; the enumerated reasons are supported by evidence. The order is sufficient."); *In re I.B.*, 619 S.W.2d 584, 587 (Tex. Civ. App.—Amarillo 1981, no writ) (same); *Matter of T.D.*, 817 S.W.2d 771, 775-77 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (same).

[55]

*In re W.R.M.*, 534 S.W.2d at 182 (order is sufficient if it "discloses that the matters listed in Subsection (f) were considered"); *In re C.L.Y.*, 570 S.W.2d at 239 (transfer order stated that the juvenile court "has considered" the Subsection 54.02(f) factors); *P.G.*, 616 S.W.2d at 638-39 (juvenile court's order "listed the . . . factors of section 54.02(f) and stated that each had been considered in making a determination" that waiver of jurisdiction was appropriate); *Casiano*, 687 S.W.2d at 449 ("An order is sufficient which states [*inter alia*] that all factors listed in § 54.02(f) were considered by the [juvenile] court[.]").

[56]

*See* note 54, *ante*. Early case law seemed to contemplate that greater specificity might be

court "certify its action, including the . . . findings of the court[.]"

The courts of appeals have also uniformly agreed that, absent an abuse of discretion, a reviewing court should not set aside the juvenile court's order transferring jurisdiction.[57] What they mean by "abuse of discretion" in this context is not altogether clear. Some courts of appeals have declared that the juvenile court's decision must simply be a guided one, not arbitrary or capricious.[58] Even so, the courts of appeals have entertained various challenges

necessary to satisfy *Kent*'s emphasis on meaningful appellate review. *See In re J.R.C.*, 522 S.W.2d at 583-84 ("To sum up, besides giving reasons for waiver in its order the Juvenile Court has a mandatory duty to file findings covering matters actually considered, including all matters mentioned in Subsection (f), and to certify such order and findings to the appropriate district court."). This insistence on "rigid adherence to the governing statutes . . . in proceedings of this nature[,]" *id.* at 584, however, soon gave way to a laxer attitude that, so long as the juvenile court's order identified the relevant factors (however conclusorily) and the evidence would support a transfer based on those factors, the order would be regarded as sufficient. *See* Douglas A. Hager, *Does the Texas Juvenile Waiver Statute Comport with the Requirements of Due Process?*, 26 TEX. TECH. L. REV. 813, 838-45 (1995) (tracing the retreat of the courts of appeals from "the procedural safeguards inherent in the *J.R.C.* holding"); Robert O. Dawson, *Delinquent Children and Children in Need of Supervision: Draftsman's Comments to Title 3 of the Texas Family Code*, 5 TEX. TECH. L. REV. 509, 564-65 (1974) ("The committee's draft [of Section 54.02(h)] stated that if the juvenile court waives jurisdiction 'it shall briefly state in the order its reasons for waiver.' The fact that the Legislature changed 'briefly state' to 'state specifically' indicates that it contemplated more than merely an adherence to printed forms and, indeed, contemplated a true relevation [sic] of reasons for making this discretionary decision.").

[57] *E.g.*, *Matter of Honsaker*, 539 S.W.2d at 201; *C.M.*, 884 S.W.2d at 563; *Matter of J.P.O.*, 904 S.W.2d 695, 698 (Tex. App.—Corpus Christi 1995, writ denied); *Matter of K.B.H.*, 913 S.W.2d 684, 687-88 (Tex. App.—Texarkana 1995, no pet.); *In re J.J.*, 916 S.W.2d 532, 535 (Tex. App.—Dallas 1995, no writ); *State v. Lopez*, 196 S.W.3d 872, 874 (Tex. App.—Dallas 2006, pet. ref'd); *Faisst*, 105 S.W.3d at 12. *Cf. T.P.S. v. State*, 590 S.W.2d 946, 953-54 (Tex. Civ. App.—Dallas 1979, ref'd n.r.e.) (observing that *Kent* "recognizes that the statute of the District of Columbia there in question gave the juvenile court a substantial degree of discretion as to the factual considerations to be evaluated, the weight to be given them and the conclusion to be reached") (internal quotation marks omitted).

[58] *See, e.g.*, *Matter of M.D.B.*, 757 S.W.2d 415, 417 (Tex. App.—Houston [14th Dist.] 1988,

to the legal and/or factual sufficiency of the evidence presented at the transfer hearing to support the juvenile court's decision to waive its jurisdiction.[59] Some courts of appeals (like the court of appeals in this case) have examined the evidence to determine its sufficiency to support specific findings of fact with respect to the Section 54.02(f) factors,[60] while mindful

no writ) ("In reviewing the [juvenile] court's action for an abuse of discretion, this court must determine if the [juvenile] court acted without reference to any guiding rules and principles."); *Matter of T.D.*, 817 S.W.2d at 773 ("The [juvenile] court must act with reference to guiding rules and principles, reasonably, not arbitrarily, and in accordance with the law.").

[59] *See, e.g.*, *Matter of I.J., Jr.*, 546 S.W.2d 110, 111 (Tex. Civ. App.—Eastland 1977, no writ) (finding the evidence to support "the findings in the transfer order" to be both legally and factually sufficient); *Matter of T.D.*, 817 S.W.2d at 777 ("The [juvenile] court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards applied in reviewing the legal or factual sufficiency of the evidence supporting the jury's answers to special issues."); *Matter of G.F.O.*, 874 S.W.2d 729, 731-32 (Tex. App.—Houston [1st Dist.] 1994, no writ) ("If an appellate court finds the evidence factually or legally insufficient to support the juvenile court's order transferring jurisdiction of a youth to the criminal district court, it will necessarily find the juvenile court has abused its discretion."); *Matter of J.P.O*, 904 S.W.2d at 699-700 ("The juvenile court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards as are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answers to a charge."); *Matter of K.B.H.*, 913 S.W.2d at 688 ("Under an abuse of discretion standard, the legal sufficiency of the evidence is not an independent ground of error, but is a relevant factor in assessing whether the [juvenile] court abused its discretion."); *Faisst*, 105 S.W.3d at 12 ("Relevant factors to be considered when determining if the [juvenile] court abused its discretion include legal and factual sufficiency of the evidence."); *Bleys v. State*, 319 S.W.3d 857, 861 (Tex. App.—San Antonio 2010, no pet.) (same).

[60] *See, e.g.*, *Matter of P.A.C.*, 562 S.W.2d at 916-17 (finding that the evidence was factually sufficient to support the juvenile court's findings with respect to several of the subsection (f) factors); *Moore*, 713 S.W.2d at 768-70 (reviewing both the legal and factual sufficiency of the evidence to support the juvenile court's findings with respect to various subsection (f) factors); *Matter of T.D.*, 817 S.W.2d at 777-79 (conducting legal and factual sufficiency analysis of the last subsection (f) factor); *In re J.J.*, 916 S.W.2d at 537 ("Additionally, there was legally and factually sufficient evidence before the [juvenile] court supporting affirmative findings regarding each of the . . . factors set forth in section 54.02(f) of the family code."); *Matter of D.D.*, 938 S.W.2d 172, 174-76 (Tex. App.—Fort Worth 1996, no writ) (reviewing the factual sufficiency of the evidence to support the juvenile court's finding regarding two of the subsection (f) factors); *Bleys*, 319 S.W.3d

that not every factor must support transfer before the juvenile court may exercise its discretion to waive jurisdiction.[61] Other courts of appeals have accepted the juvenile offender's invitation to measure the sufficiency of the evidence to support the juvenile court's ultimate conclusion, pursuant to Section 54.02(a), that the seriousness of the offense or background of the child indicated the need for transfer in order to ensure the welfare of the community.[62] No court of last resort in Texas, insofar as our research reveals, has yet

---

at 862-63 (reviewing the factual sufficiency of the evidence to support the juvenile court's finding under Section 54.02(f)(4)).

[61]

*See, e.g.*, *L.M. v. State*, 618 S.W.2d 808, 813 (Tex. Civ. App.—Houston [1st Dist.] 1981, ref'd n.r.e.) ("Although all of the factors enumerated in section 54.02(f) must be considered by the [juvenile] judge, each one need not be present in a specific case."); *Matter of E.D.N.*, 635 S.W.2d at 800 ("While the court must consider all of these factors, it need not find that they have all been established."); *C.W. v. State*, 738 S.W.2d 72, 75 (Tex. App.—Dallas 1987, no writ) ("The [juvenile] court is bound to consider, as it did in this case, all [of the] statutory factors, among other matters. It need not find that each of the . . . factors is established by the evidence."); *Matter of M.D.B.*, 757 S.W.2d at 417 ("[W]hile the juvenile court is required to consider all [of the] factors of § 54.02(f) . . ., it is not required to find that each factor is established by the evidence."); *Matter of C.C.G.*, 805 S.W.2d 10, 15 (Tex. App.—Tyler 1991, writ denied) (same); *In re J.J.*, 916 S.W.2d at 535 (same); *Matter of D.D.*, 938 S.W.2d at 176 (same); *Bleys*, 319 S.W.3d at 862 (same).

[62]

*See, e.g.*, *Moore*, 713 S.W.2d at 767-68, 770 (reviewing the legal and factual sufficiency of the evidence to support the juvenile court's determination that the seriousness of the offense and the child's background justified transfer); *Matter of T.D.*, 817 S.W.2d at 777 (at least nominally reviewing legal and factual sufficiency of the ultimate question of whether there is "probative evidence that the welfare of the community required a waiver of jurisdiction of the juvenile court and criminal proceedings against appellant"); *Matter of J.P.O.*, 904 S.W.2d at 700-02 (Reviewing both the legal and factual sufficiency of the evidence to support the juvenile court's bottom-line conclusion that transfer was appropriate); *In re J.J.*, 916 S.W.2d at 536-37 (finding the evidence sufficient to support the juvenile court's determination that both the seriousness of the offense and the child's background merited waiving jurisdiction); *Matter of D.D.*, 938 S.W.2d at 176-77 (reviewing the factual sufficiency of the evidence to support the juvenile court's subsection (a) determination whether the seriousness of the offense or the child's background warranted transfer); *Bleys*, 319 S.W.3d at 862-63 (reviewing the factual sufficiency of the evidence to support the juvenile court's conclusion under Section 54.02(a)(3)).

spoken on these matters.

The State argues that the court of appeals in this case erred in four respects. First, the court of appeals erred to conduct a factual-sufficiency review, since appeal from a juvenile transfer order is now "a criminal matter" that is "governed" by the Texas Code of Criminal Procedure and the rules of appellate procedure that apply to criminal cases.[63] After all, this Court, in *Brooks v. State*, rejected factual sufficiency for purposes of criminal appeals.[64] Second, the court of appeals erred to conclude that the seriousness of the offense could not, by itself, justify the juvenile court's transfer order. Third and fourth, the court of appeals erred by failing to take into account the reasons for waiver of jurisdiction that the juvenile court gave orally on the record, and, for that matter, any other justifications for transfer that may appear in the record, regardless of whether the juvenile court purported to rely on them, either orally on the record or in its written order. These are questions that the courts of appeals have never explicitly addressed.

### III. ANALYSIS

#### A. Factual Sufficiency Under Section 54.02

The State argues that the court of appeals erred to apply a factual-sufficiency standard to the Section 54.02(f)(4) factor, regarding "the prospects of adequate protection of the public and the likelihood of rehabilitation of the child by use of procedures, services, and

---

[63] TEX. CODE CRIM. PROC. art. 44.47(c).

[64] *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010).

facilities currently available to the juvenile court."[65]  Indeed, in a supplemental brief filed after oral argument in this Court, the State argues that the appropriate standard of appellate review ought to be a bare abuse-of-discretion standard, unencumbered by any inquiry into the sufficiency of the evidence, either legal or factual, to support the juvenile court's transfer order.  We disagree.

That the appeal of a transfer order is now regarded as a "criminal matter," under Article 44.47(c), does not in itself control the question of whether factual-sufficiency review is available on direct appeal.[66]  The juvenile transfer proceeding remains civil in character, governed by the Juvenile Justice Code; the proceedings do not become criminal unless and until the juvenile court waives its exclusive jurisdiction and transfers the child to a criminal court for prosecution as an adult.  More to the point, the availability of factual-sufficiency review is, in any event, not so much a function of the character of the proceeding—civil versus criminal—as it is a function of the applicable burden of proof.  As we have already pointed out, in a juvenile transfer proceeding, the burden is on the State to produce evidence that persuades the juvenile court, by a preponderance of the evidence, that waiver of its

---

[65]

TEX. FAM. CODE § 54.02(f)(4). *See Moon*, 410 S.W.3d at 377 (holding that the evidence was legally sufficient to establish this factor, but factually insufficient).

[66]

Indeed, in light of Article 44.47(d), it is arguable that factual sufficiency remains a viable claim on appeal from a transfer order, notwithstanding that it is now a "criminal matter."  After all, factual sufficiency was a "claim[] under the law that existed before January 1, 1996, that could have been raised on direct appeal of a transfer under Section 54.02, Family Code."  TEX. CODE CRIM. PROC. art. 44.47(d).

exclusive jurisdiction is appropriate. Facts which must be proven by a preponderance of the evidence are ordinarily susceptible to appellate review for factual sufficiency.[67] In arguing that factual-sufficiency review is unavailable, the State analogizes to the juvenile-adjudication proceedings.[68] In that context, the courts of appeals have declined to conduct factual-sufficiency review, noting that adjudication proceedings are "quasi-criminal" in nature.[69] But the burden of proof in a juvenile-adjudication proceeding is beyond a reasonable doubt,[70] not a preponderance of the evidence. In that context, it is certainly arguable that our holding in *Brooks* applies.[71] In the review of any issue that is subject to a burden of proof *less* than beyond a reasonable doubt, however, the Texas Supreme Court has

---

[67] *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013).

[68] State's Brief on the Merits at 12-13.

[69] *See In re R.R.*, 373 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, writ denied) ("Although juvenile [adjudication] proceedings are civil matters, the standard applicable in criminal matters [*i.e.*, proof beyond a reasonable doubt] is used to assess the sufficiency of the evidence a finding the juvenile has engaged in delinquent conduct."); *In re A.O.*, 342 S.W.3d 236, 239 (Tex. App.—Amarillo 2011, writ denied) (same). *Cf.*, *In re B.L.D.*, 113 S.W.3d 340, 351 (Tex. 2003) (juvenile delinquency cases are considered to be "quasi-criminal"). The State cites only one case which suggests, and then only in obvious dicta, that factual-sufficiency review may likewise be inappropriate for appellate review of juvenile transfer proceedings after the enactment of Article 44.47. *See In re M.A.V.*, 88 S.W.3d 327, 331 n.2 (Tex. App.—Amarillo 2002, no pet.).

[70] *See* TEX. FAM. CODE § 54.03(f) ("The child shall be presumed to be innocent of the charges against the child and no finding that a child has engaged in delinquent conduct or conduct indicating a need for supervision may be returned unless the state has proved such beyond a reasonable doubt.").

[71] *In re R.R.*, 373 S.W.3d at 734; *In re A.O.*, 342 S.W.3d at 239; *In re C.E.S.*, 400 S.W.3d 187, 194 (Tex. App.—El Paso 2013, no writ).

authorized the courts of appeals to conduct a factual-sufficiency review.[72] The particular appellate standard for factual sufficiency depends upon the level of confidence applicable to the burden of proof—whether preponderance of the evidence or clear and convincing evidence—in the trial court.[73] But the courts of appeals have continued to address issues of factual sufficiency when they are raised on appeal in all but the juvenile-adjudication context. Indeed, even in criminal cases, we have said that the courts of appeals may conduct factual-sufficiency reviews when confronted with fact issues for which the burden of proof is by a preponderance of the evidence.[74] The court of appeals did not err to address the appellant's contention that the evidence was factually insufficient to support the juvenile court's finding

---

[72]

*See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (announcing the appropriate appellate standard for review of factual-sufficiency claims in cases of termination of parental rights, in which the State must satisfy a clear and convincing evidence burden of proof); *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002) (same). And, indeed, in *In re A.O.*, the Amarillo Court of Appeals, having refused to subject the juvenile-adjudication proceeding to factual-sufficiency review, in the next breath did conduct a factual-sufficiency review of the evidence proffered at the juvenile disposition hearing. 342 S.W.3d at 240.

[73]

*See In re C.H.*, 89 S.W.3d at 25 (distinguishing appropriate appellate standard for factual sufficiency depending upon whether the trial-level burden of proof is preponderance of the evidence or clear and convincing evidence); *In re J.F.C.*, 96 S.W.3d at 267 (same). *See also Southwestern Bell Telephone Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004) ("In sum, we think that whenever the standard of proof at trial is elevated, the standard of appellate review must likewise be elevated.").

[74]

*See Matlock*, 392 S.W.3d at 667, 670 ("Prior to *Brooks*, we used the traditional Texas civil burdens of proof and standards of review in the context of affirmative defenses where the rejection of an affirmative defense is established by a 'preponderance of the evidence.' Our decision in *Brooks* did not affect that line of cases. * * * A criminal defendant might also raise a factual-sufficiency challenge to the jury's adverse finding on his affirmative defense.") (footnotes omitted).

with respect to Section 52.04(f)(4).[75]

Having said that, we do agree with the State's contention to the limited extent that it may argue that sufficiency review should *not* apply to appellate review of the ultimate question under Section 54.02(a)(3), that is, whether "because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings." The discretion of the juvenile court is at its apex when it makes this largely normative judgment.[76] As long as the appellate court can determine that the juvenile court's judgment was based upon facts that are supported by the record, it should refrain from interfering with that judgment absent a scenario in which the facts identified in the

---

[75]

The State does not take issue with the court of appeals's formulation of the difference, under current law, between legal- and factual-sufficiency analyses:

Under a legal sufficiency challenge, we credit evidence favorable to the challenged finding and disregard contrary evidence unless a reasonable fact finder could not reject the evidence. * * * Under a factual sufficiency challenge, we consider all of the evidence presented to determine if the [juvenile] court's finding is so against the great weight and preponderance of the evidence as to be clearly wrong or unjust."

*Moon*, 410 S.W.3d at 370-71 (citations omitted).

[76]

Whether the offense is serious enough, and/or the juvenile's background demonstrates, that waiver of the juvenile court's jurisdiction is warranted to ensure the welfare of the community is, in many respects, similar to the question of whether the non-exclusive *Keeton* factors warrant a jury's prediction, at the punishment phase of a capital-murder trial, that the accused will probably commit criminal acts of violence that would constitute a continuing threat to society. Even before *Brooks* was decided, we insisted that this special issue, while not "wholly normative in nature," is nevertheless too "value-laden" to be amenable to a factual-sufficiency review. *McGinn v. State*, 961 S.W.2d 161, 169 (Tex. Crim. App. 1998); *Keeton v. State*, 724 S.W.2d 58, 61-64 (Tex. Crim. App. 1987); TEX. CODE CRIM. PROC. art. 37.071 §2(b)(1).

transfer order, based on evidence produced at the transfer hearing as it relates to the non-exclusive Subsection (f) factors and beyond, bear no rational relation to the specific reasons the order gives to justify the conclusion that the seriousness of the offense and/or the juvenile's background warrant transfer. The appellate courts should conduct appellate review of the juvenile court's discretionary decision to waive jurisdiction in essentially the same way that the El Paso Court of Appeals has said that the juvenile court's discretion in determining juvenile dispositions should be scrutinized on appeal, to wit:

> We apply a two-pronged analysis to determine an abuse of discretion: (1) did the [juvenile] court have sufficient information upon which to exercise its discretion; and (2) did the [juvenile] court err in its application of discretion? A traditional sufficiency of the evidence review helps answer the first question, and we look to whether the [juvenile] court acted without reference to any guiding rules or principles to answer the second.[77]

Similarly, we hold that, in evaluating a juvenile court's decision to waive its jurisdiction, an appellate court should first review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under "traditional sufficiency of the evidence review." But it should then review the juvenile court's ultimate waiver decision under an abuse of discretion standard. That is to say, in deciding whether the juvenile court erred to conclude that the seriousness of the offense alleged and/or the background of the juvenile called for criminal proceedings for the welfare of the community, the appellate court should simply ask, in light of its own analysis of the sufficiency of the evidence to support the Section 54.02(f) factors

---

[77] *In re J.R.C.S.*, 393 S.W.3d 903, 914 (Tex. App.—El Paso 2012, no writ). *See also In re M.A.C.*, 999 S.W.2d 442, 446 (Tex. App.—El Paso 1999, no writ).

and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles. In other words, was its transfer decision essentially arbitrary, given the evidence upon which it was based, or did it represent a reasonably principled application of the legislative criteria? And, of course, reviewing courts should bear in mind that not every Section 54.02(f) factor must weigh in favor of transfer to justify the juvenile court's discretionary decision to waive its jurisdiction.[78]

## B. The Seriousness of the Offense

The State complains that the court of appeals should not have concluded that the juvenile court abused its discretion for waiving jurisdiction based upon the seriousness of the offense. The State points out that the juvenile court made an explicit finding of fact in its transfer order that the appellant's alleged offense was committed against the person of another, under Section 54.02(f)(1). This finding of fact was amply supported by the record, the State contends, and was sufficient by itself to provide a legitimate basis for the trial court's discretionary decision to waive jurisdiction. The court of appeals rejected this contention because "[i]f, as the State argues, the nature of the offense alone justified waiver, transfer would automatically be authorized in certain classes of 'serious' crimes such as murder, and the subsection (f) factors would be rendered superfluous."[79] In support of the

---

[78] *See Hidalgo*, 983 S.W.3d at 754 n.16 ("The juvenile court is not required to find each criterion before it can transfer a case to district court. The court may order a transfer on the strength of any combination of the criteria.").

[79] *Moon*, 410 S.W.3d at 375.

court of appeals's observation, the appellant reminds us that the Supreme Court in *Kent* seems to have disfavored the "routine waiver [of juvenile-court jurisdiction] in certain classes of alleged crime."[80]

The courts of appeals have long held that the offense that the juvenile is alleged to have committed, so long as it is substantiated by evidence at the transfer hearing and of a sufficiently egregious character, will justify the juvenile court's waiver of jurisdiction regardless of what the evidence may show with respect to the child's background and other Section 54.02(f) factors.[81] This is different from holding that the mere *category* of offense the juvenile is alleged to have committed, without more, will serve to justify transfer. If that

---

[80] Appellant's Response to the State's Brief at 13 (citing *Kent*, 383 U.S. at 553 n.15).

[81] The earliest case to so hold was *In re Buchanan*, 433 S.W.2d 787, 789 (Tex. Civ. App.—Fort Worth 1968, ref'd n.r.e.). Almost eight years later, another court of appeals reversed a juvenile transfer order, *inter alia*, because of a lack of evidence substantiating a bare recitation in the transfer order that "the offense was murder, committed against the person of another[.]" *R.E.M.*, 541 S.W.2d at 846-47. The San Antonio Court of Appeals distinguished *Buchanan*, observing that there, "the 'evidence introduced at the hearing show[ed] without dispute that appellant shot and killed a man without provocation or cause.' 433 S.W.2d at 789. Here there is no admissible evidence to that effect." *R.E.M.*, *supra*, at 847. Later cases have likewise found the evidence sufficient to support waiver of juvenile jurisdiction based on the seriousness of the offense alone, as established by evidence presented at the transfer hearing. *See e.g.*, *Matter of C.C.G.*, 805 S.W.2d at 14-15 ("[A]ssuming, arguendo that there is insufficient evidence concerning the background of appellant, the juvenile court's determination that the seriousness of the offense, as substantiated by the evidence, is alone sufficient."); *C.M.*, 884 S.W.2d at 564 ("The [juvenile court] is free to decide to transfer the case due to the seriousness of the crime, even if the background of the child suggests the opposite."); *Matter of D.D.*, 938 S.W.2d at 177 ("The seriousness of the offenses D.D. is charged with [capital murder, murder, aggravated kidnapping, among others] is sufficient to support his transfer despite his background."); *Faisst*, 105 S.W.3d at 11 ("[C]ourt does not abuse its discretion by finding the community's welfare requires transfer due to the seriousness of the crime [intoxication manslaughter] alone, despite the child's background."); *McKaine*, 170 S.W.3d at 291 (same).

is the only consideration informing the juvenile court's decision to waive jurisdiction—the category of crime alleged, rather than the specifics of the particular offense—then we agree with the Supreme Court's intimation in *Kent* that the transfer decision would almost certainly be too ill-informed to constitute anything but an arbitrary decision.

The transfer order in this case made no findings about the specifics of the capital murder, finding no more than probable cause to believe that the appellant committed "the OFFENSE alleged." It gave as the juvenile court's sole reason for waiving jurisdiction that, "because of the seriousness of the OFFENSE, the welfare of the community requires criminal proceedings[,]" and then it simply recited "that the OFFENSE allege [sic] to have been committed WAS against the person of another[.]"[82] The evidence at the hearing, of course, painted a much more graphic picture of the appellant's charged offense. Whether the court of appeals should have taken that evidence into account in evaluating the juvenile court's exercise of discretion depends upon whether the abuse-of-discretion evaluation must be limited to a review of the "specific reasons" and facts in support thereof that are expressly set out in the juvenile court's written transfer order as per Section 54.02(h), or whether the court of appeals may take into account *other* reasons and *other* facts not explicitly set out in

---

[82] The other two Subsection (f) findings of fact, stated equally conclusorily in the juvenile court's transfer order, corresponded to the sophistication-and-maturity factor (Section 54.02(f)(2)) and the prospects-for-adequate-public-protection-and-rehabilitation-of-the-juvenile factor (Section 54.02(f)(4)). Both of these factors seem far more relevant to the background-of-the-child reason for concluding that the welfare of the community requires criminal proceedings than to the seriousness-of-the-offense reason—the latter of which was the only Section 54.02(a)(3) reason that the juvenile court actually provided in its transfer order to justify the waiver of jurisdiction.

the transfer order.  We turn to that question next.

### C.  Appellate Review of the Reasons/Facts Cited in the Transfer Order

There is an inherent tension between the broad discretion that the juvenile court is afforded in making the normative judgment of whether to waive jurisdiction, on the one hand, and *Kent*'s insistence upon the primacy of appellate review in order to assure that the juvenile court's broad discretion is not abused, on the other.  The legislative response to this inherent tension was to mandate, in Section 54.02(h), that the juvenile court "shall state specifically in its order its reasons for waiver and certify its action, including the written order and findings of the court[.]"[83]  Although the committee that drafted the Juvenile Justice Code had recommended a version of this provision that would have required no more than a "brief" statement of the reasons justifying transfer, the Legislature deemed this insufficient: "The fact that the Legislature changed 'briefly state' to 'state specifically' indicates that it contemplated more than merely an adherence to printed forms and, indeed, contemplated a true relevation [sic] of reasons for making this discretionary decision."[84]  Moreover, Section 54.02(h) obviously contemplates that both the juvenile court's reasons for waiving its jurisdiction and the findings of fact that undergird those reasons should appear in the transfer

---

[83]  TEX. FAM. CODE § 54.02(h).

[84]  Dawson, 5 TEX. TECH. L. REV. at 564-65.

order.[85]  In this way the Legislature has required that, in order to justify the broad discretion

invested in the juvenile court, that court should take pains to "show its work," as it were, by

spreading its deliberative process on the record, thereby providing a sure-footed and definite

basis from which an appellate court can determine that its decision was in fact appropriately

guided by the statutory criteria, principled, and reasonable—in short, that it is a decision

demonstrably deserving of appellate imprimatur even if the appellate court might have

reached a different result.  This legislative purpose is not well served by a transfer order so

lacking in specifics that the appellate court is forced to speculate as to the juvenile court's

reasons for finding transfer to be appropriate or the facts the juvenile court found to

substantiate those reasons.[86]  Section 54.02(h) requires the juvenile court to do the heavy

lifting in this process if it expects its discretionary judgment to be ratified on appeal.  By the

same token, the juvenile court that shows its work should rarely be reversed.

Given this legislative regime, we think it only fitting that a reviewing court should

measure sufficiency of the evidence to support the juvenile court's stated reasons for transfer

by considering the sufficiency of the evidence to support the facts as they are expressly found

by the juvenile court in its certified order.  The appellate court should *not* be made to

---

[85]

*In re J.R.C.*, 522 S.W.2d at 583-84.

[86]

*Cf. State v. Cullen*, 195 S.W.3d 696, 698 (Tex. Crim. App. 2006) (requiring trial courts to enter explicit findings of fact in the pre-trial motion to suppress context because "courts of appeals should not be forced to make assumptions (or outright guesses) about a trial court's ruling on a motion to suppress";  thus ensuring "a resolution [on appeal] that is based on the reality of what happened rather than on assumptions that may be entirely fictitious").

rummage through the record for facts that the juvenile court *might* have found, given the evidence developed at the transfer hearing, but did not include in its written transfer order. We therefore hold that, in conducting a review of the sufficiency of the evidence to establish the facts relevant to the Section 54.02(f) factors and any other relevant historical facts, which are meant to inform the juvenile court's discretion whether the seriousness of the offense alleged or the background of the juvenile warrants transfer for the welfare of the community, the appellate court must limit its sufficiency review to the facts that the juvenile court expressly relied upon, as required to be explicitly set out in the juvenile transfer order under Section 54.02(h).

### D.  Application of Law to Fact

The juvenile court did not "show its work" in the transfer order in this case.  The only reason specifically stated on the face of the transfer order to justify waiver of juvenile jurisdiction is that the offense alleged is a serious one.  The only fact specified in the written transfer order in support of this reason is that the offense that the appellant is alleged to have committed is an offense against the person of another.  We agree with the court of appeals's conclusion that a waiver of juvenile jurisdiction based on this particular reason, fortified only by this fact, constitutes an abuse of discretion.

It is true that the juvenile court found other facts that would have been relevant to support transfer for the alternative reason that the appellant's background was such as to render waiver of juvenile jurisdiction appropriate.  First, without going into any relevant

detail, the juvenile court's order found that the appellant was sophisticated and mature enough to have been able to waive his constitutional rights effectively and assist in the preparation of his defense at trial, just as an adult would.[87]    Second, again without elaboration, the juvenile court found "little, if any" prospect of protecting the public and rehabilitating the appellant given its available resources.  But, because the juvenile court did

---

[87]    In any event, it is doubtful that the Legislature meant for the sophistication-and-maturity factor to embrace the juvenile's ability to waive his constitutional rights and assist in his defense. It is true that a great many of the courts of appeals seem to think that it does.  The juvenile court's transfer order in the early case of *In re Buchanan* included such a finding.  433 S.W.2d at 788.  So did the juvenile courts's orders in *In re W.R.M.*, 534 S.W.2d at 181-82, *Matter of Honsaker*, 539 S.W.2d at 200, *P.G.*, 616 S.W.2d at 639, *Casiano*, 687 S.W.2d at 449, and *Matter of D.D.*, 938 S.W.2d at 175.  Another relatively early case, however, found this emphasis on the juvenile's ability to waive his rights and assist in his defense "somewhat difficult to understand." *R.E.M.*, 541 S.W.2d at 846.  The San Antonio Court of Appeals "believe[d] that the requirement that the juvenile court consider the maturity and sophistication of the child refers to the question of culpability and responsibility for his conduct, and is not restricted to a consideration of whether he can intelligently waive rights and assist in the preparation of his defense." *Id*.  Later, the Houston 1st Court of Appeals observed that "[o]ur courts have held that the requirement that the [juvenile] court consider the child's sophistication and maturity refers to the question of culpability and responsibility of the child for his conduct, *as well as* the consideration of whether he can intelligently waive his rights and assist in his defense." *Matter of S.E.C.*, 605 S.W.2d at 958 (emphasis added).  Thus did the latter view of the relevance of a juvenile's ability to waive his rights and assist in his defense as an adult creep into our jurisprudence.  No case has ever undertaken to explain, however, exactly *how* the juvenile's capacity (or lack thereof) to waive his constitutional rights and assist in his defense is relevant to whether the welfare of the community requires transfer, and we fail to see that it is. Other courts of appeals have rightly declared "the purpose of an inquiry into the mental ability and maturity of the juvenile [to be] to determine whether he appreciates the nature and effect of his voluntary actions and whether they were right or wrong." *Matter of E.D.N.*, 635 S.W.2d at 801 (citing *L.W.F. v. State*, 559 S.W.2d 428, 431 (Tex. Civ. App.—Fort Worth 1977, ref'd n.r.e.)).  In our view, the juvenile's capacity to waive his constitutional rights and help a lawyer to effectively represent him is almost as misguided as the juvenile court's logic in the present case when it orally pronounced that the appellant should be transferred, *inter alia*, merely for the sake of judicial economy, so that his case could be consolidated with that of his already-certified-as-an-adult co-defendant.  Such a notion is the very antithesis of the kind of individualized assessment of the propriety of waiver of juvenile jurisdiction that both *Kent* and our statutory scheme expect of the juvenile court in the exercise of its transfer discretion.

not cite the appellant's background as a reason for his transfer in its written order, these findings of fact are superfluous.

Moreover, even were we to regard the recitation of these conclusory facts in the written transfer order to constitute an acceptably implicit indication that the juvenile court *also* considered the appellant's background as a reason for the transfer, we would nonetheless uphold the court of appeals's judgment. First, with respect to the appellant's sophistication and maturity, we agree with the court of appeals that the evidence was legally insufficient to support such a finding, since the State offered no evidence at the juvenile hearing to inform the juvenile court's consideration of that Section 54.02(f) factor.[88] Second, with respect to the prospects for protecting the public and rehabilitating the appellant, we are not at liberty to second-guess the court of appeals's conclusion that the juvenile court's finding regarding this Section 54.02(f) factor was supported by factually insufficient evidence in that it was so against the great weight and preponderance of the evidence as to be manifestly unjust.[89]

---

[88] *See Moon*, 410 S.W.3d at 375 ("[T]here must be some evidence to support the juvenile court's finding that [the appellant] was sufficiently sophisticated and mature for the reasons specified by the court in order to uphold its waiver determination. Our review finds no evidence supportive of the court's finding that [the appellant] was 'of sufficient sophistication and maturity to have intelligently, knowingly and voluntarily waived all constitutional rights heretofore waived . . . [and] to have aided in the preparation of [his] defense.'"). We find no such evidence in the record either.

[89] *Id*. at 377-78. *See Cain v. State*, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997) ("Our inability to decide questions of fact precludes *de novo* review of courts of appeals'[s] factual decisions."); *Laster v. State*, 275 S.W.3d 512, 519 (Tex. Crim. App. 2009) ("We do not conduct a de novo factual sufficiency review."); *Villarreal v. State*, 286 S.W.3d 321, 328 (Tex. Crim. App.

## IV. CONCLUSION

The court of appeals did not err to undertake a factual-sufficiency review of the evidence underlying the juvenile court's waiver of jurisdiction over the appellant. Because the juvenile court made no case-specific findings of fact with respect to the seriousness of the offense, we agree with the court of appeals that the evidence fails to support this as a valid reason for waiving juvenile-court jurisdiction. Even had the juvenile court cited the appellant's background as an alternative basis to justify his transfer, the court of appeals was correct to measure the sufficiency of the evidence to support this reason against the findings of fact made in the transfer order itself and to conclude that the evidence was insufficient to support those findings. We affirm the judgment of the court of appeals.[90]

---

2009) ("Once a court of appeals has determined such a claim of 'factual' insufficiency, this Court may not conduct a de novo review of the lower court's determination.").

[90]      Neither the State nor the appellant has contested the propriety of the court of appeals's ultimate disposition; neither party argues that the court of appeals erred, even in light of its holding that the juvenile court abused its discretion to waive jurisdiction, to declare that the cause remains "pending in the juvenile court." *Moon*, 410 S.W.3d at 378. The question nevertheless ineluctably presents itself: Pending for what? We leave that question for the juvenile court, but we do note that at least one legislatively provided alternative would seem to be for the juvenile court to conduct a new transfer hearing and enter another order transferring the appellant to the jurisdiction of the criminal court, assuming that the State can satisfy the criteria under Section 54.02(j) of the Juvenile Justice Code. *See* TEX. FAM. CODE § 54.02(j) ("(j)  The juvenile court may waive its exclusive original jurisdiction and transfer a person to the appropriate district court or criminal district court for criminal proceedings if: (1) the person is 18 years of age or older; (2) the person was: (A) 10 years of age or older and under 17 years of age at the time the person is alleged to have committed . . . an offense under Section 19.02, Penal Code; . . . (3) no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted; (4) the juvenile court finds from a preponderance of the evidence that: . . . (B) after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because: . . . (iii) *a previous transfer order was reversed by an appellate court* or set aside by a district court; and (5) the juvenile court determines that there is probable cause to believe that the

DELIVERED:     December 10, 2014
PUBLISH

_____

child before the court committed the offense alleged." (emphasis supplied)).

It has been suggested that, rather than affirm the court of appeals's reversal of the juvenile court's transfer order, we should first remand the cause to the court of appeals with an order that the court of appeals remand the cause to the juvenile court for additional specific findings of fact to determine retroactively whether its original transfer order was valid. In *State v. Elias*, 339 S.W.3d 667, 675-77 (Tex. Crim. App. 2011), for example, we held that the court of appeals should not have affirmed the trial court's grant of a motion to suppress without first remanding the case to the trial court to supply missing but critical findings of fact to inform appellate review of the ruling on that motion, under the aegis of Rule 44.4 of the Texas Rules of Appellate Procedure. Subsection (a) of this rule provides that "[a] court of appeals must not affirm or reverse a judgment or dismiss an appeal if: (1) the trial court's erroneous action or failure or refusal to act prevents the proper presentation of a case to the court of appeals; and (2) the trial court can correct its action or failure to act." TEX. R. APP. P. 44.4 (a). Subsection (b) requires the appellate court to "direct the trial court to correct the error." TEX. R. APP. P. 44.4(b). There are at least two problems with such a remand here. First of all, it is far from clear that Rule 44.4 can be read to authorize an appellate court to direct a *juvenile* court (not "the trial court") to supply a missing finding of fact. Secondly, and more fundamentally, there is a jurisdictional impediment to applying Rule 44.4 in the present context—a kind of chicken-and-egg paradox. The juvenile court has either validly waived its exclusive jurisdiction, thereby conferring jurisdiction on the criminal courts, or it has not. We cannot order the court of appeals to remand the cause to the juvenile court unless and until we affirm its judgment that the juvenile court's transfer order was invalid and that the criminal courts therefore never acquired jurisdiction. Unless and until the transfer order is declared invalid, the criminal courts retain jurisdiction, and the juvenile court lacks jurisdiction to retroactively supply critical findings of fact to establish whether or not it has validly waived its jurisdiction.