# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00561-CV

### In the Matter of N. P.

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 391ST JUDICIAL DISTRICT
NO. D-16-0018-J, HONORABLE BRAD GOODWIN, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

N.P. allegedly committed the offense of capital murder when he was 15 years old by shooting two young men in the head at the behest of his gang leader. *See* Tex. Penal Code § 19.03(a)(7). The trial court, sitting as juvenile court, signed an order waiving jurisdiction and transferring his case to criminal district court. In his sole appellate issue, N.P. contends that the transfer decision was an abuse of discretion because it was supported by factually insufficient evidence. We will affirm the trial court's order.

## APPLICABLE LAW AND STANDARD OF REVIEW

Juvenile courts have "exclusive original jurisdiction" over proceedings "in all cases involving the delinquent conduct or conduct indicating a need for supervision engaged in by a person who was a child within the meaning of this title at the time the person engaged in the conduct." Tex. Fam. Code § 51.04(a). However, the juvenile court may waive its jurisdiction under certain circumstances:

The juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was:

(A) 14 years of age or older at the time he is alleged to have committed the offense, if the offense is a capital felony, an aggravated controlled substance felony, or a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; or

(B) 15 years of age or older at the time the child is alleged to have committed the offense, if the offense is a felony of the second or third degree or a state jail felony, and no adjudication hearing has been conducted concerning that offense; and

(3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

*Id.* § 54.02(a).

In making the determination required by Subsection (a) of this section, the court shall consider, among other matters:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* § 54.02(f). This list of factors is non-exclusive and facilitates the juvenile court's balancing of

"the potential danger to the public posed by the particular juvenile offender with the juvenile

2

offender's amenability to treatment." *Moon v. State*, 451 S.W.3d 28, 38 (Tex. Crim. App. 2014) (quotation marks removed).

Because the juvenile court's decision of whether to waive jurisdiction is a "largely normative judgment," we apply a modified standard of review to our factual-sufficiency analysis:

> [I]n evaluating a juvenile court's decision to waive its jurisdiction, an appellate court should first review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under "traditional sufficiency of the evidence review." But it should then review the juvenile court's ultimate waiver decision under an abuse of discretion standard. That is to say, in deciding whether the juvenile court erred to conclude that the seriousness of the offense alleged and/or the background of the juvenile called for criminal proceedings for the welfare of the community, the appellate court should simply ask, in light of its own analysis of the sufficiency of the evidence to support the Section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles. In other words, was its transfer decision essentially arbitrary, given the evidence upon which it was based, or did it represent a reasonably principled application of the legislative criteria? And, of course, reviewing courts should bear in mind that not every Section 54.02(f) factor must weigh in favor of transfer to justify the juvenile court's discretionary decision to waive its jurisdiction.

*Id.* at 47.

Therefore, we first analyze the factual sufficiency of the evidence, determining whether "the juvenile court's findings are so against the great weight and preponderance of the proof as to be clearly wrong and unjust." *See In re E.H.*, No. 01-16-00802-CV, 2017 WL 3526717, at *5 (Tex. App.—Houston [1st Dist.] Aug. 17, 2017, no pet. h.) (mem. op.) (citing *In re S.G.R.*, 496 S.W.3d 235, 239 (Tex. App.—Houston [1st Dist.] 2016, no pet.)). We limit our review to "the facts the juvenile court expressly relied on in its transfer order." *Id.* (citing *Moon*, 451 S.W.3d at 50). "If the findings of the juvenile court are supported by . . . factually sufficient proof, then we review

3

the ultimate waiver decision under an abuse of discretion standard." *In re S.G.R.*, 496 S.W.3d at 239 (citing *Moon*, 451 S.W.3d at 47).

## DISCUSSION

N.P. contends that the trial court abused its discretion in transferring his case to criminal court because there was factually insufficient evidence to support two of the court's findings:

- The Court considered the sophistication and maturity of the child and finds that [N.P.] is sophisticated and mature enough to be treated as an adult.

- The Court finds that [N.P.] cannot be rehabilitated in the juvenile system . . . .

We will analyze each of these findings in turn.

First, the trial court's order indicates that it based its finding that N.P. "is sophisticated and mature enough to be treated as an adult" on the following facts, among others:

- Dr. William Montgomery, a psychologist called by the State, testified that:

  - He interviewed N.P. and N.P.'s mother.

  - He administered multiple psychological examinations to N.P.

  - N.P. had an IQ of 95, an average level IQ.

  - N.P. would be able to effectively assist his legal counsel in providing a defense.

  - N.P. "had the competency, sophistication and maturity to stand trial as an adult."

  - N.P. admitted to being in a gang and stated, "I will try to do better if I get out of this mess."

4

- Julie Alonso-Katzowitz, a physician called by N.P., testified that N.P.'s "mental status exam was pretty much normal." In addition, her expert report indicated that N.P. understood the charges against him, understood the fact that the State was attempting to try him as an adult, and admitted that he made the wrong choice by joining a gang.

- Heather Smith, a juvenile probation officer, testified that:

  - N.P. understood the seriousness of his situation and "was able to express himself and ask appropriate questions and show maturity about the severity of him being in detention."

  - N.P. was able to earn his high school diploma through a computerized, self-paced program while in detention.

N.P. argues that this evidence is factually insufficient because Dr. Montgomery did not compare N.P.'s results with those of an adult or testify as to how N.P.'s IQ related to his sophistication and maturity. N.P. also points out that Dr. Alonso-Katzowitz testified that adolescents around the ages of fifteen and sixteen are at a peak age for "violence," "impulsivities," and "disinhibition" because their "frontal lobe" has not yet fully developed. However, N.P. cites no authority for the proposition that the State must produce expert testimony explicitly comparing a juvenile's capacities to those of an adult. Dr. Montgomery and the other witnesses discussed above presented evidence that N.P. understands the nature of his offense and the proceedings against him, that he is of average intelligence, that he was mature enough to earn his diploma while in detention, and that he has the moral sophistication to regret his past decisions.

Having reviewed the evidence that the trial court describes in its order in light of the entire record before us, we cannot conclude that the court's finding that N.P. "is sophisticated and mature enough to be treated as an adult" was so against the great weight and preponderance of the

5

proof as to be clearly wrong and unjust. Therefore, we conclude that there was factually sufficient evidence to support this finding.

Second, the trial court's order indicates that it based its finding that N.P. "cannot be rehabilitated in the juvenile system" on the following facts, among others:

- Adrian Castro, a criminal investigator with the San Angelo Police Department, testified concerning the details of N.P.'s offense. Detective Castro's testimony shows that N.P. committed the murders as part of a coordinated plan, not merely from impulsivity.

- Heather Smith, a juvenile probation officer who met frequently with N.P., testified that, because of the seriousness of N.P.'s offense and N.P.'s age, the juvenile system does not have the resources to adequately address N.P.'s needs. Smith explained that N.P. would soon be too old to be supervised by the juvenile system and that the system would not be able to successfully rehabilitate N.P. in so short a time. Smith opined that N.P. should not remain in the juvenile system.

N.P. argues that Smith's testimony amounted to nothing more than "a bald statement that her department cannot provide services." In addition, N.P. points out that Smith also testified concerning ways in which N.P. was doing well in detention, such as the fact that he was "catching up in school" and that his risk assessment for re-offending was lowered from moderate to low. However, we do not agree that Smith's testimony was conclusory. She explained that she had worked as a juvenile probation officer for almost 16 years and that she had met with N.P. "twice a week over the past year." Smith based her opinion on the seriousness of N.P.'s offense, the short time remaining for him in the juvenile system, and her own understanding of the system's resources. Moreover, to the extent that some details of her testimony would not tend to support the trial court's finding, we note that it was the court's role as fact-finder to weigh all the evidence and resolve

6

apparent inconsistencies. *See Iqbal v. Federal Nat'l Mortg. Ass'n*, No. 03-15-00667-CV, 2017 WL 2856737, at *2 (Tex. App.—Austin June 29, 2017, no pet.) (mem. op.); *Winkley v. State*, 123 S.W.3d 707, 711 (Tex. App.—Austin 2003, no pet.).

Having reviewed the evidence that the trial court describes in its order in light of the entire record before us, we cannot conclude that the court's finding that N.P. "cannot be rehabilitated in the juvenile system" was so against the great weight and preponderance of the proof as to be clearly wrong and unjust. Therefore, we conclude that there was factually sufficient evidence to support this finding.

Having determined that there was factually sufficient evidence to support both of the challenged findings, we now consider whether the trial court's ultimate decision to waive its jurisdiction was an abuse of discretion. We note that N.P. has not challenged the trial court's findings: (1) that there was probable cause to believe that N.P. committed capital murder, which is a serious offense "against the person," *see* Tex. Fam. Code § 54.02(f)(1) (directing courts to give "greater weight in favor of transfer . . . to offenses against the person" than to offenses against property), (2) that N.P.'s record and previous history included joining a criminal street gang, heavy drug use, and amassing 34 referrals for conduct violations while in detention, and (3) that "the public cannot be adequately protected if [N.P.] were to remain in the juvenile system." We are also mindful that "not every Section 54.02(f) factor must weigh in favor of transfer to justify the juvenile court's discretionary decision to waive its jurisdiction." *Moon*, 451 S.W.3d at 47. Given that each of the trial court's findings is either unchallenged or supported by sufficient evidence, we cannot conclude that the trial court's decision to waive jurisdiction and transfer N.P.'s case to criminal court was an abuse of discretion. Accordingly, we overrule N.P.'s sole appellate issue.

**CONCLUSION**

We affirm the trial court's order waiving jurisdiction and transferring N.P.'s case from juvenile court to criminal district court.

_____

Scott K. Field, Justice

Before Justices Puryear, Field, and Bourland

Affirmed

Filed: October 31, 2017