**Opinion issued December 14, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-17-00411-CV

———————————————

## IN THE MATTER OF J. F. C.

———————————————————————————————————

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-03782J**

———————————————————————————————————

## MEMORANDUM OPINION

This is an accelerated interlocutory appeal from the juvenile court's order waiving jurisdiction over a minor, pseudonymously referred to as John Francis Conner, and transferring the case to criminal district court so he can be tried as an

adult for capital murder.[1] In a single issue, John contends that the evidence is legally and factually insufficient to sustain the juvenile court's findings supporting its order to transfer him to the criminal district court. We affirm.

## Background

One day, the complainant, a fifteen-year-old freshman, pseudonymously referred to as Kristen Price, did not return home from school, and her family reported her missing. She was last seen leaving school around noon with her boyfriend, John, and several of their friends. The friends told the police that they had gone to a nearby restaurant and then to an abandoned apartment complex, where they left John and Kristen alone.

The police then went to the apartment complex, where they found Kristen's body hidden in a cabinet under a sink in one of the apartments. Kristen was clothed, but her jeans were unbuttoned and unzipped, and she was missing her shoes and underwear, which were found in the adjacent unit.

As the police were conducting their investigation, John's father took him driving to search for Kristen. As they drove around searching for her, John told his father to take him home because Kristen was dead. John's comment prompted his father to take him to the police station, where the police searched John's cell phone.

---

[1] *See* TEX. FAM. CODE §§ 54.02(a), 56.01(c)(1)(A); TEX. PENAL CODE § 19.03(a)(2).

The police found text messages on John's phone. The text messages showed that, on the day Kristen went missing, while she was still at school, John texted her and demanded that she skip school with him. John threatened Kristen that if she did not leave with him, her life would "end on bloods." The police also recovered a video from John's phone. The video itself was black, but the audio appeared to record John sexually assaulting Kristen as she cried and begged him to stop.

John was then interviewed by K. Turner, a detective who had been investigating Kristen's disappearance and murder. John initially denied killing Kristen and dismissed the video as being from a "long time ago." But then Turner showed John the date and time stamp and again asked John whether he killed Kristen, and John responded that he did.

John was charged with capital murder. The State moved the juvenile court to waive its jurisdiction and transfer John to the criminal district court to stand trial as an adult. After a transfer hearing during which the juvenile court received documentary evidence and heard testimony from Detective Turner and Dr. Uche Chibueze, a psychologist who examined John for certification, the juvenile court entered an order finding that the seriousness of the alleged offense and John's background required that he be transferred to the criminal district court for prosecution as an adult. John appeals.

## Juvenile Court's Waiver of Jurisdiction

In his sole issue, John argues that the juvenile court abused its discretion in waiving jurisdiction and transferring his case to criminal court because the evidence is legally and factually insufficient to support the court's finding that the seriousness of the alleged offense and John's background require criminal rather than juvenile proceedings.

## A. Applicable law and standard of review

Children ordinarily are not subject to criminal proceedings like adults. Instead, juvenile courts have exclusive original jurisdiction over cases involving what otherwise would be criminal conduct by children 10 years of age or older and under 17 years of age. TEX. FAM. CODE §§ 51.02(2)(a), 51.03(a)(1), 51.04(a). But if a juvenile court determines that certain conditions are met after a hearing, it may waive its jurisdiction and transfer a child to the district court for criminal proceedings. *Id.* § 54.02(a), (c). The State initiates this process by requesting such a hearing and providing notice. *Id.* § 54.02(b).

To transfer a child who is alleged to have committed a first-degree felony, like capital murder, to the criminal district court, a juvenile court must find that (1) the child was 14 or older at the time of the alleged offense, (2) there is probable cause to believe the child committed the offense, and (3) the welfare of the community requires criminal rather than juvenile proceedings due to the

seriousness of the alleged offense or the background of the child. *Id.* § 54.02(a). In

deciding whether the preponderance of the evidence satisfies this last requirement,

the juvenile court must consider four non-exclusive factors:

> (1)    whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;
>
> (2)    the sophistication and maturity of the child;
>
> (3)    the record and previous history of the child; and
>
> (4)    the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* § 54.02(f); *see Moon v. State*, 451 S.W.3d 28, 45 (Tex. Crim. App. 2014).

All four of the Section 54.02(f) criteria need not weigh in favor of transfer

for a juvenile court to waive its jurisdiction. *Moon*, 451 S.W.3d at 47. Any

combination of these criteria may suffice. *Id.* at 47 n.78. If it decides to waive its

jurisdiction based on its consideration of these factors, the juvenile court must

enter a written order in which it states specifically its reasons for waiver and its

findings. TEX. FAM. CODE § 54.02(h); *Moon*, 451 S.W.3d at 49–50.

On appeal, we first review the legal and factual sufficiency of the evidence

relating to the juvenile court's specific findings of fact regarding the four factors

stated in Section 54.02(f). *Moon*, 451 S.W.3d at 47. When reviewing the legal

sufficiency of the evidence, we credit the proof favorable to the findings and

5

disregard contrary proof unless a reasonable factfinder could not reject it. *Moon v. State*, 410 S.W.3d 366, 371 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 451 S.W.3d 28 (Tex. Crim. App. 2014). If there is more than a scintilla of evidence supporting a finding, then the proof is legally sufficient. *Id.* When reviewing the factual sufficiency of the evidence, we consider all of the proof presented to determine if the juvenile court's findings are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* But our review of the sufficiency of the evidence supporting waiver is limited to the facts the juvenile court expressly relied on in its transfer order. *Moon*, 451 S.W.3d at 50.

If the findings of the juvenile court are supported by legally and factually sufficient proof, then we review the ultimate waiver decision under an abuse of discretion standard. *Moon*, 451 S.W.3d at 47. As with any decision that lies within the discretion of the trial court, the salient question is not whether we might have decided the issue differently. *Id.* at 49. Instead, we consider in light of our review of the sufficiency of the evidence whether the juvenile court's decision represents a reasonably principled application of the Section 54.02(f) factors or was essentially arbitrary or made without reference to the statutory criteria for waiver. *Id.* at 47. So long as the juvenile court correctly applies these statutory criteria and complies with the requirement to specifically state its supporting findings, its waiver decision generally will pass muster under this standard of review. *Id.* at 49.

**B.      The juvenile court did not abuse its discretion by waiving its jurisdiction**

In its order transferring the case to criminal court, the juvenile court considered the factors listed in Section 54.02(f) and found that all four factors supported its ultimate finding that the case requires criminal rather than juvenile proceedings. We consider the juvenile court's findings on each factor in turn.

**1.      Offense against the person**

The first factor instructs the juvenile court to consider "whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person . . . ." TEX. FAM. CODE § 54.02(f)(1). The alleged offense here was against a person, and the juvenile court concluded that this first factor favored transfer.

The juvenile court described the supporting evidence in some detail, finding certain aspects of the alleged offense "particularly egregious and aggravating . . . ." It described how John sent Kristen a series of threatening text messages on the cell phone that he had given her. In the text messages, John demanded that Kristen skip school and meet him, and he threatened to kill her if she refused. The juvenile court noted Kristen's young age—when she was murdered, Kristen was only fifteen years old. The juvenile court found that John created a "graphic and disturbing audio recording" of himself committing "a brutal sexual assault" as

Kristen cried and begged him to stop. The juvenile court found that John was "disturbingly calm and unresponsive to" Kristen's pleas.

The juvenile court's Section 54.02(f)(1) findings were all supported by evidence, including the text messages and video recovered from John's phone and the testimony of Officer Turner.

### 2. Sophistication and maturity of the child

The juvenile court also found that the second factor—the sophistication and maturity of the child—favored transfer. TEX. FAM. CODE § 54.02(f)(2).

The juvenile court noted that the psychologist found that John had an "average level of criminal sophistication and maturity." But the juvenile court further noted that the testing was "heavily dependent" on John's "self-reporting" and that the psychologist believed John had attempted to present an "unrealistically favorable image" of himself. Thus, in assessing John's sophistication and maturity, the juvenile court gave greater weight to the offense itself than to the test results.

In particular, the juvenile court gave great weight to John's text message to Kristen threatening that her life would "end on bloods." The juvenile court found that the text indicated a certain degree of premeditation. The juvenile also gave great weight to the evidence that John attempted to conceal the crime. The juvenile court found that there was probable cause to believe that John dressed Kristen and hid her body beneath a sink, removed Kristen's phone from the scene, and then

8

attempted to delete the incriminating text messages. These findings were supported by evidence, including primarily Officer Turner's testimony.

John contends that in assessing his sophistication and maturity, the juvenile court should have given greater weight to his "below average" IQ and given less weight to the evidence of the offense because it had already considered that evidence in finding probable cause and in assessing the first factor. In other words, John contends that the juvenile court should have weighed the evidence differently. But how to weigh the evidence was a matter of the juvenile court's discretion; it is not a ground for reversal of its order.

### 3. Record and previous history of the child

The juvenile court next found that the third factor—John's record and previous history—favored transfer. *Id.* § 54.02(f)(3). The juvenile court found that John had engaged in a variety of delinquent behavior both before and after the alleged offense, and that this weighed in favor of transfer.

The juvenile court found that John had been charged with shoplifting, resulting in a deferred prosecution that John successfully completed; that he at times failed to abide by his curfew and left home without permission; that he often smoked marijuana; that since seventh grade, he had been in seven or eight fights, three of which resulted in school suspensions; that he was habitually truant from school, with 34 unexcused absences during the 2015–2016 school year; that he had

been expelled from school and forced to attend alternative school for coming to class under the influence of a controlled substance; and that he had a history of "being mean" to Kristen.[2]

The juvenile court further found that, while detained for this alleged offense, John continuously engaged in misconduct. John had refused to attend school or follow staff instructions; been caught with contraband, including a shank; and been in fights with other detained juveniles.

Again, all of these findings were supported by the record, and John does not challenge their sufficiency on appeal.[3] Instead, he contends that the juvenile court should have weighed the evidence differently and in his favor. But again, how to weigh the evidence was a matter of the juvenile court's discretion.

### 4. Protection of the public and rehabilitation of the child

Finally, the juvenile court found that the fourth factor—the prospects of adequate protection of the public and the likelihood of John's rehabilitation by use of procedures, services, and facilities currently available to the juvenile court—favored transfer. *Id.* § 54.02(f)(4).

---

[2] The juvenile court noted that this history was "supported by the testimony of Dr. Uche Chibueze indicating it would be rare for an individual to start with this level of violence against another person without a history of similar violence."

[3] The one exception is the finding that he had a history of "being mean" to Kristen. John contends that there is no evidence supporting this finding. John is incorrect. The psychological report prepared by Chibueze states that Kristen's sister said that John was mean to Kristen.

The juvenile court noted that the psychologist found that John "has an average level of treatment amenability and a moderate risk (range) for re-offending when the offense alleged is considered." But the juvenile court discounted this evidence and gave greater weight to the egregious and aggravating nature of the alleged offense and the limited time John could be held in the juvenile system. *See id.* § 54.04(d), (*l*) (outlining possible dispositions for juvenile offenders); TEX. HUM. RES. CODE § 245.151(e) (requiring transfer of juveniles with determinate sentences on 19th birthday).

Again, John does not actually challenge the legal or factual sufficiency of these findings but rather argues that the juvenile court should have weighed the evidence differently. And again, we hold that this was a matter within the juvenile court's discretion.

John further notes that it was within the State's discretion to proceed in a different manner so that the proceedings would be held in juvenile court but with the possibility of John receiving a sentence that would last past his 19th birthday. The fact that the State had the discretion to pursue an alternative method of prosecution is irrelevant to whether the juvenile court abused its discretion in determining the likelihood of John's rehabilitation by use of procedures, services, and facilities currently available to the juvenile court.

We hold that the evidence is legally and factually sufficient to support the juvenile court's finding that the four Section 54.02(f) factors favored waiver of its jurisdiction and therefore overrule John's sole issue.

## Conclusion

We affirm the juvenile court's order waiving its jurisdiction.


Harvey Brown
Justice

Panel consists of Justices Jennings, Bland, and Brown.