**Affirmed and Opinion Filed June 7, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-16-00207-CV

_____

### IN THE MATTER OF B.C.B., A JUVENILE

**On Appeal from the County Court At Law No. 1**
**Kaufman County, Texas**
**Trial Court Cause No. 15J-032**

## MEMORANDUM OPINION
Before Chief Justice Wright, Justice Bridges, and Justice Evans
Opinion by Justice Bridges

After a juvenile certification hearing, the juvenile court waived its jurisdiction and transferred appellant to a district court for criminal proceedings. Appellant argues the State improperly delayed filing the case before his eighteenth birthday, and the trial court erred by finding probable cause existed to believe he committed aggravated sexual assault. We affirm.

**Background**

Appellant, a fifteen-year-old at the time of the alleged offense, and complainant attended high school together. They lived in the same neighborhood and sometimes rode the bus home after school.

After riding the bus on March 4, 2013, appellant invited complainant to his home and told her he had something to give her for her fourteenth birthday. Appellant told her to wait in the garage. Complainant thought appellant was going to officially ask her to be his girlfriend. Instead, appellant returned with a box containing a knife. Appellant had a condom inside of his

hat and told complainant to put it on his penis. She complied and he said, "That was a good warm up and now it's game time."

Appellant held the knife to complainant's throat and threatened to slit it if she did not stop crying or told anyone. He then sexually assaulted her by putting his finger and penis inside her vagina without her consent. According to complainant, appellant's older brother came home in the middle of the attack and pushed appellant off of her. She then grabbed her sweatshirt, wrapped it around her waist, and ran home. Complainant stayed silent about the attack for over two years.

On April 11, 2015, complainant's parents called their neighbor, Constable Jason Johnson, and asked him to speak with complainant about acting out and drinking. During their conversation, complainant started crying and told him about the assault. Constable Johnson then told her parents, and they filed a police report. Constable Johnson also reported the assault to Detective Michael Clay with the Forney Police Department on April 12 or 13.

Detective Clay began gathering information and contacted the Kaufman County Children's Advocacy Center to set up an interview. Tracy Ramirez conducted a forensic interview on April 16, 2015.[1] Detective Clay observed complainant's interview and described her as mature, detail-oriented, and very calm. She identified appellant as the person who held her at knife-point and digitally and vaginally penetrated her in his garage. Ramirez described complainant's behavior as "straight forward," and she answered all the questions without "too much trouble," but she did tear up a few times.

Complainant described sensory details of the attack. For example, she remembered appellant's long finger nails and feeling his nail scratch her when he put his finger inside her. She said it felt like appellant was tearing her when he put his penis inside of her, and she

---

[1] Complainant was sixteen-years-old at the time of the interview.

remembered laying on the garage floor and "his stomach smacking into her stomach." Ramirez found complainant "very credible," and Ramirez believed complainant had suffered "a very horrible incident."

Complainant did not outcry until over a year after appellant moved away. Complainant told Ramirez she was afraid to tell her parents about the attack because she had disobeyed their rule to go straight home after getting off the bus. Her parents also disliked appellant and did not want her spending time with him. She blamed herself for what happened and felt like she deserved it.

KW, complainant's mother, testified her daughter's behavior had changed over the past few years, and she was more defiant, careless, and rebellious. Complainant had a physical reaction when appellant's name was mentioned. KW also noted complainant's fear of the dark and being alone.

Appellant was a member of the high school track team. School dismissed at 3:50 p.m., practice began at 4:10 p.m., and it often lasted until 6 p.m. The track coach required a teammate to participate in practice every day to run in the meet that week. Although appellant participated in the track meet the week of March 4, 2013, neither the coach nor three of his teammates could testify with certainty that appellant attended track practice on March 4, 2013.

Appellant's mother, TB, and his older brother, BB, testified complainant's story was false. TB testified she picked complainant up every day after track practice and although she could not remember anything specifically about March 4, 2013, she did not believe he missed practice that week. She further denied that the attack occurred in her garage because she was the only one who had a key to their house and access to the garage door opener.

BB denied walking in on appellant sexually assaulting complainant. He said complainant made up the story. He claimed he remembered March 4, 2013 very well because his birthday

was three days later, and he met somebody on that day he still talked to. He claimed not to know complainant very well, but said complainant told him she had lied in the past about making an outcry against someone else. He never told anyone about her alleged similar outcry.

At the conclusion of the certification hearing, the trial court determined probable cause existed to believe appellant committed the offense. The trial court waived its jurisdiction and transferred the case. This appeal followed.

## Applicable Law and Standard of Review

The juvenile court has exclusive, original jurisdiction over children sixteen years of age and younger. TEX. FAM. CODE ANN. § 51.04(a) (West 2014); *Ex parte Waggoner*, 61 S.W.3d 429, 431 (Tex. Crim. App. 2001). The discretionary power to transfer a juvenile may be exercised only after the State files a petition or motion requesting waiver and transfer. TEX. FAM. CODE ANN. § 54.02(b) (West 2014). The juvenile court may waive jurisdiction and transfer a case to a district court for criminal proceedings if the child is alleged to have committed a first-degree felony and was fourteen years of age or older at the time of the alleged offense. *See* TEX. FAM. CODE ANN. § 54.02(a)(2). Waiver of jurisdiction is also contingent on a full investigation and a finding by the court that there is probable cause to believe the child committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child, the welfare of the community requires criminal proceedings. *State v. Lopez*, 196 S.W.3d 872, 874 (Tex. App.—Dallas 2006, pet. ref'd). The hearing is conducted without a jury. TEX. FAM. CODE ANN. § 54.02(c). Before the hearing, the juvenile court is required to order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his or her circumstances, and the circumstances surrounding the alleged offense. TEX. FAM. CODE ANN. § 54.02(a); *Lopez*, 196 S.W.3d at 874.

Based on this information, the juvenile court judge must determine, among other matters: (1) whether the offense was against person or property, with greater weight in favor of transfer given to offenses against the person; (2) whether the offense was committed in an aggressive and premeditated manner; (3) whether there is evidence on which a grand jury may be expected to return an indictment; (4) the sophistication and maturity of the child; (5) the record and previous history of the child; and (6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court. TEX. FAM. CODE ANN. §§ 54.02(a), (f); *Lopez*, 196 S.W.3d at 874.

A juvenile certification hearing is not a trial on the merits. *Lopez*, 196 S.W.3d at 874. At the hearing, the court does not consider guilt or innocence, but whether the juvenile's and society's best interests would be served by maintaining custody of the child in the juvenile system or by a transfer to a district court for trial as an adult. *Id.* The hearing is comparable to a criminal probable cause hearing and the court need not resolve evidentiary conflicts beyond a reasonable doubt. *Id.* Probable cause consists of sufficient facts and circumstances to warrant a prudent person to believe that the suspect committed the offense. *Grant v. State*, 313 S.W.3d 443, 445 (Tex. App.—Waco 2010, no pet.).

The juvenile court's findings regarding transfer are reviewed for an abuse of discretion. *Lopez*, 196 S.W.3d at 874. Under an abuse of discretion standard, the legal sufficiency of the evidence is not an independent ground of error, but is a relevant factor in assessing whether the trial court abused its discretion. *In re K.B.H.*, 913 S.W.2d 684, 688 (Tex. App.—Texarkana 1995, no writ). We review the trial court's specific findings of fact concerning a transfer decision under traditional sufficiency of the evidence principles. *Moon v. State*, 451 S.W.3d 28, 47 (Tex. Crim. App. 2014). Under a legal sufficiency challenge, we credit evidence favorable to

the challenged finding and disregard contrary evidence unless a reasonable factfinder could not reject the evidence. *In re J.J.*, 916 S.W.2d 532, 535 (Tex. App.—Dallas 1995, no pet.), *abrogated on other grounds by Moon*, 451 S.W.3d at 28. It is not within our power to second guess the factfinder unless only one inference can be drawn from the evidence. *Id.* If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Id.*

**Probable Cause Inquiry**

In his second issue, appellant argues probable cause does not exist to believe he committed aggravated sexual assault. Section 54.02(j) of the family code requires that the juvenile court, before it may waive jurisdiction, determine that "there is probable cause to believe that the child before the court committed the offense alleged." TEX. FAM. CODE ANN. § 54.02(j)(5). In support of his argument, appellant contends (1) complainant had motive to make up false accusations; (2) BB denied the offense occurred and his recall of the events was reliable; and (3) TB also refuted the allegations because she was the only person who had a key to the home and access to the garage door opener.

Despite appellant's arguments to the contrary, such evidence does not prove he could not have committed the offense. Rather, considering the evidence in the light most favorable to the court's finding, the court heard evidence from both the forensic interviewer and the detective that complainant described in detail how appellant invited her to his home and sexually assaulted her at knife-point.

Although TB did not believe the assault occurred because she picked appellant up after track practice every day, she admitted she did not remember anything in particular about March 4, 2013. She also admitted to leaving her home every day around 2 p.m. to pick up her youngest child from school and not returning until 5:30 p.m. or 6 p.m., which fell within the time frame of when the sexual assault could have occurred in the garage.

–6–

While appellant elicited some testimony that complainant's father had a history of indecency with children, the forensic interviewer testified that based on the amount of detail complainant provided about the attack in the garage, she did not believe complainant was expressing repressed memories of abuse by her father and blaming appellant. Moreover, complainant had only met her father once.

Finally, appellant tried to establish he did not commit the offense because he ran in the track meet the week of March 4, 2013, and according to the team rules, he could not have missed practice that week. However, none of appellant's teammates testified with certainty to his presence at practice on March 4. Further, the track coach admitted he was "pretty lenient" with accepting excuses to miss practice and "pretty much" let them do anything they needed to do so long as the students told him face to face.

Considering the evidence in the light most favorable to the trial court's finding, more than a scintilla of evidence supports a probable cause finding. Accordingly, the trial court did not abuse its discretion in waiving its jurisdiction, certifying appellant as an adult, and transferring the case to a criminal district court. We overrule appellant's second issue.

### Practicable to Proceed With Charges

In his first issue, appellant argues the trial court abused its discretion by finding from a preponderance of the evidence that for reasons outside the control of the State, it was not practicable to proceed with charges before his eighteenth birthday. Appellant asserts Detective Clay's workload was not an acceptable reason for delay. The State responds it provided other evidence besides Detective Clay's workload, which included reasons beyond his control, that rendered it impracticable to proceed in juvenile court before appellant's eighteenth birthday.

Pursuant to section 54.02(j), the juvenile court may transfer the case to a criminal district court only if, among other findings, it determines by a preponderance of the evidence that "for a

reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person" or "after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person." TEX. FAM. CODE ANN. §52.04(j)(4)(A), (B). The State had the burden of showing that proceeding in juvenile court was not practicable because of circumstances outside the control of the State. *Moore v. State*, 446 S.W.3d 47, 51 (Tex. App.—Houston [1st Dist.] 2014, pet. granted).

We first acknowledge the parties have briefed the issue under 54.02(j)(4)(A) but also referenced "due diligence," which is encompassed under section 54.02(j)(4)(B). In appellant's denial to the State's petition for waiver of jurisdiction and transfer, he argued the State was not diligent in its efforts to submit either a petition alleging delinquent conduct or requesting juvenile certification. At the conclusion of the certification hearing, the trial court stated it believed the police used due diligence in preparing, investigating, filing, and prosecuting the case. However, the trial court's specific written finding states, "By a preponderance of the evidence, the Court finds that for a reason beyond the control of the State it was not practicable to proceed in juvenile court before the 18th birthday of the person." Such language tracks subsection 54.02(j)(4)(A).

While subsection (A) requires the State to establish the delay was attributable to "a reason beyond the control of the state," and subsection (B) requires a showing of "due diligence," the two concepts, while distinct, overlap considerably. *See Webb v. State*, 08-00-00161-CR, 2001 WL 1326894, at *7 (Tex. App.—El Paso Oct. 25, 2001, pet. ref'd) (not designated for publication). Our resolution of this issue does not turn specifically on which subsection applies because the record supports the trial court's finding under either subsection.

Neither the family code nor the juvenile justice code defines "due diligence," but the phrase has been defined in other contexts. *See In re B.R.H.*, 426 S.W.3d 163, 168 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Due diligence requires the State to "move ahead" or

"reasonably explain delays." *Id.* It does not require the State "to do everything perceivable and conceivable to avoid delay." *In re N.M.P.*, 969 S.W.2d 95, 100 (Tex. App.—Amarillo 1998, no pet.). Diligence is usually a fact question that the trial court determines in light of the circumstances of each case. *In re B.R.H.*, 426 S.W.3d at 168.

Here, the record shows complainant told her neighbor about the abuse on April 11, 2015, and Detective Clay learned of the attack on April 12 or 13. Detective Clay set up a forensic interview on April 16, 2015.

Detective Clay then continued his investigation by contacting appellant's mother to determine his whereabouts. The first time Detective Clay called, she said she would see him later that night and would have him call Detective Clay. Appellant did not call. He tried to contact appellant again on May 5, 2015 and May 19, 2015 but to no avail. Mother said appellant might be in Tyler so Detective Clay contacted other school districts to find him.

Detective Clay also tried to locate appellant's brother, BB, for information. Appellant's mother acknowledged Detective Clay contacted her in attempts to reach BB, and she gave BB the message to return the call. She did not follow up to make sure he returned the call. BB admitted receiving a call from Detective Clay, but he never spoke to him. He testified Detective Clay never said why he wanted to talk with him, and he did not want to miss any culinary school classes.

Detective Clay attempted to contact EM, complainant's friend to whom she provided some details about the attack. He explained he liked a parent or guardian to be present for such interviews, and he had difficulty coordinating an interview because of the parents' schedule.

Detective Clay contacted North Forney High School and left messages and talked with the custodian of records trying to ascertain whether appellant was in school on the day in question or participated in after school activities. No one was forthcoming with information. He

did not talk to the track coach or any teammates because he never received information appellant participated in track.

Detective Clay testified he had approximately twenty-five days to investigate the case. He did not consider this a long or short amount of time because "it's case dependent, each one is unique." Although he attested to his other work obligations, which included serving as a municipal court bailiff and participating in officer certifications, he believed he diligently worked the case. Although he agreed with defense counsel he had probable cause to arrest appellant based on information provided by the parents in the police report on April 13, 2015, he did not immediately seek an arrest warrant because he did not have an official outcry from complainant and appellant's location was unknown. He also explained that despite an initial "knee jerk" that probable cause existed, the additional gathering of information could cause him to change his mind, which served to protect the accused from an unfounded allegation.

Detective Clay later located appellant in McKinney and confirmed he was enrolled in McKinney ISD. Detective Clay obtained an arrest warrant on May 20, 2015 and executed it on May 21, 2015. Appellant turned eighteen on May 22, 2015.

In light of the circumstances, Detective Clay worked to "move ahead" the case and reasonably explained why he did not seek and execute an arrest warrant immediately on April 13 or after the April 16 forensic interview. He repeatedly attempted to contact several witnesses, and for reasons outside the control of the State, he was unable to talk to them. Further, it was outside the State's control that complainant waited until so close to appellant's eighteenth birthday to outcry. In light of the circumstances, the trial court did not err by finding for reasons beyond the control of the State it was not practicable to proceed in juvenile court before appellant's eighteenth birthday.

In reaching this conclusion, we are unpersuaded by appellant's reliance on *Moore v. State*, 446 S.W.3d 47 (Tex. App.—Houston [1st Dist.] 2014, pet. granted). In that case, the appellate court determined an officer's large case load and a clerical mistake on documents regarding the defendant's age were not reasons beyond the State's control that prevented it from prosecuting the defendant before his eighteenth birthday. *Id*. at 51–52. Here, unlike *Moore*, Detective Clay discussed more than his workload and explained his repeated attempts to contact potential witnesses and further investigate the assault. Accordingly, we overrule appellant's first issue.

**Conclusion**

The judgment of the trial court is affirmed.


/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

160207F.P05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

IN THE MATTER OF B.C.B., A
JUVENILE

On Appeal from the County Court At Law
No. 1, Kaufman County, Texas
Trial Court Cause No. 15J-032.
Opinion delivered by Justice Bridges.
Chief Justice Wright and Justice Evans
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered June 7, 2016.